## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

Kelcy Warren,

     *Plaintiff*,

       v.

Booz Allen Hamilton Inc.

     *Defendant*.

Case No. 8:24-cv-1252-LKG

**Defendant Booz Allen Hamilton Inc.'s Memorandum of Points and Authorities in Support of Its Motion to Dismiss**

**Table of Contents**

Introduction......................................................................................................................1

Background......................................................................................................................3

Legal Standard ...............................................................................................................5

I.    Count I Should Be Dismissed Because Mr. Warren Does Not and Cannot State a Claim Under Section 7431................................................................................6

      A.    The Two-Year Statute of Limitations Under 26 U.S.C. § 7431(d) Has Expired...................................................................................................6

      B.    By the Plain Text of Section 7431(a)(2), Mr. Warren Has No Cause of Action Against Booz Allen...............................................................9

      C.    Booz Allen Cannot be Held Vicariously Liable for Littlejohn's Rogue Criminal Conduct................................................................................13

II.    Count II Should Be Dismissed Because Mr. Warren Does Not and Cannot State a Claim that Booz Allen Negligently Supervised Littlejohn. ...............................17

      A.    Mr. Warren Does Not and Cannot Show Littlejohn Was "Incompetent."............17

      B.    Mr. Warren Does Not Adequately Plead that Booz Allen Did Know or Should Have Known About Any of Littlejohn's Problematic Attributes.............18

      C.    Neither Littlejohn's Supposed "Incompetency" Nor Booz Allen's Supervision of Its Employee Proximately Caused Mr. Warren's Alleged Injury...................................................................................................20

III.    Count III Should Be Dismissed Because Booz Allen Did Not Invade Mr. Warren's Privacy, Littlejohn Did.......................................................................24

Conclusion ....................................................................................................................26

## Table of Authorities

### Cases

*Aloe Vera of Am., Inc. v. United States ("Aloe Vera I")*, 580 F.3d 867 (9th Cir. 2009) ...........7, 13

*Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82 (D.D.C. 2018) ......................................7

*Brasko v. First Nat'l Bank of Pa.*, 2023 WL 7191120 (D. Md. Nov. 1, 2023) ............................14

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).....2, 11

*Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989) ......................................................6

*Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 501 A.2d 35 (Md. 1985)...........17

*Dean v. United States*, No. 09-cv-3095-MLC, 2009 WL 4911939 (D.N.J. Dec. 11, 2009)............8

*Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392 (D. Md. 2022)........................5, 6, 18

*Drubetskoy v. Wells Fargo Bank, N.A.*, 2013 WL 6839508 (D. Md. Dec. 20, 2013) ....................6

*Evans v. Morsell*, 395 A.2d 480 (Md. 1978) .................................................................................17

*Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 655 A.2d 1 (Md. App. 1995) ...................15

*Furman v. Sheppard*, 744 A.2d 583 (Md. App. 2000).................................................................24

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .......................................................11

*Ghaffari v. IRS*, No. 5:14-cv-02927-PSG, 2015 WL3630217 (N.D. Cal. June 10, 2015).........9, 23

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016)................................................5, 6

*Hassell v. United States*, 203 F.R.D. 241 (N.D. Tex. 1999).........................................................9

*Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ...............................14

*Kashdan v. George Mason Univ.*, 70 F.4th 694 (4th Cir. 2023).................................................19

*Lins v. United States*, No. 17-cv-2163-ELH, 2018 WL 2183393 (D. Md. May 10, 2018) ..........25

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)........................................................11, 12

*Mid-S. Music Corp. v. Kolak*, 756 F.2d 23 (6th Cir. 1984) ........................................................9

*Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125 (Md. App. 2023)...............................................17

*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) ..............................................11

*Patel v. Univ. of Maryland Coll. Park*, 2022 WL 703929 (D. Md. Mar. 8, 2022) ........................8

*Perry v. Asphalt & Concrete Servs., Inc.*, 133 A.3d 1143 (Md. 2016) ...................................20, 22

*Pinter v. Dahl*, 486 U.S. 622 (1988) ....................................................................................12

*S. Mgmt. Corp. v. Taha*, 836 A.2d 627 (Md. 2003) ................................................................24

*Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991) ..................................................................25

*Sheets v. Chepko*, 573 A.2d 413 (Md. App. 1990) ...................................................16, 24, 25

*Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, 2013 WL 5566493
    (D. Md. Oct. 8, 2013) ...................................................................................................5, 6

*Stone v. Trump*, 400 F. Supp. 3d 317 (D. Md. 2019) ..............................................................20

*United States v. Gordon*, No. 3:18-cv-00734, 2019 WL 6640289 (W.D. Ky. Dec. 5, 2019) ..........8

*United States v. Hilton*, 701 F.3d 959 (4th Cir. 2012) ...........................................................15

*United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Jan. 31, 2024) ..................................4, 15, 22

*United States v. Singh*, 518 F.3d 236 (4th Cir. 2008) .............................................................14

*Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30 (D. Md. 2020) ...........................................19, 20

*Wood v. Virginia*, 155 F.3d 564, 1998 WL 414019 (4th Cir. 1998) ..............................................7

*Young v. Hous. Auth. of Balt. City*, 2017 WL 5257127 (D. Md. Nov. 13, 2017) ...................20, 22

## Statutes and Other Authority

28 U.S.C. § 1331 ...................................................................................................................26

28 U.S.C. § 1367 ...................................................................................................................26

26 U.S.C. § 6103 .....................................................................................................7, 8, 9, 12

26 U.S.C. § 7701 ...................................................................................................................12

26 U.S.C. § 7431 .............................................................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................5

Federal Rule of Evidence 201(b)(2) ........................................................................................6

Restatement (Second) of Agency ....................................................................................14, 16

Restatement (Third) of Agency ...................................................................................14, 16, 24

## Introduction

The unauthorized disclosure of Kelcy Warren's tax return information was not just wrong, it was criminal. Indeed, the individual singularly responsible for the improper disclosure of Mr. Warren's information, Charles Littlejohn, pleaded guilty to the crime and has been sentenced to five years in prison. Littlejohn's abhorrent actions were, he admits, politically motivated. His acts were a betrayal of his co-workers, the public servants with whom he worked, the taxpayers whose information he disclosed, and every American. He was brought to justice. In his criminal case, the judge lamented that she could not sentence him to more than five years. He violated the public trust, deserved (and received) the maximum sentence, and will be incarcerated until 2029.

This lawsuit, however, is a misdirected and ill-founded response to Littlejohn's criminal conduct. It attempts to hold Booz Allen Hamilton Inc. ("Booz Allen") responsible for crimes that Littlejohn alone committed for entirely personal reasons that were antithetical to the interests of Booz Allen and completely outside the scope of his employment. Knowing that his conduct was unauthorized, Littlejohn hid his conduct from both the IRS and Booz Allen, and he engaged in sophisticated technical measures to evade controls designed to prevent such rogue and criminal behavior.

Mr. Warren, as founder and Executive Chairman of "one of the largest and most diversified publicly traded energy companies in the [energy] industry," Compl. ¶ 14, surely would not dispute that a large company cannot be vicariously liable for the criminal actions of a rogue worker whose actions run counter to—rather than in support of—the company's interests. For its part, Booz Allen has condemned the criminal wrongdoing of Charles Littlejohn, fully cooperated with the government's investigation, and provided information that contributed to Littlejohn's arrest and prosecution.

1

Mr. Warren's effort to assign blame to Booz Allen for Littlejohn's rogue conduct must be dismissed for myriad reasons.  *First*, Count I alleging a violation of 26 U.S.C. § 7431 must be dismissed because the claim is precluded by the two-year limitations period imposed in section 7431(d), as is clear from the face of the Complaint.  The statutory limitations period is absolute and runs from the date an individual discovers their tax information has been improperly disclosed, not from when the person discovers the specific grounds for any particular cause of action or the basis (or not) for a claim against a particular defendant.  As the Complaint itself establishes, Mr. Warren was put on notice of the unauthorized disclosure of his tax return information in December 2021 when ProPublica published its article, making this action untimely.

Furthermore, Count I erroneously relies on vicarious liability principles, which cannot be read into 26 U.S.C. § 7431—the basis for Mr. Warren's cause of action.  Section 7431 provides a specific and cabined private right of action against any person who knowingly or negligently discloses a federal tax return.  There is no authority for grafting common-law principles of vicarious liability onto this carefully defined statutory right.  And even if there were, Booz Allen cannot be held liable for Littlejohn's criminal conduct, which harmed Booz Allen's interests, fell outside the scope of Littlejohn's employment, and was undertaken by him solely for his own rogue and criminal purpose.

*Second*, Count II alleging negligent supervision must be dismissed because the face of the Complaint and documents cited in it, including the court-sanctioned factual statement in Littlejohn's plea agreement, make clear that Mr. Warren did not and cannot plead the elements of negligent supervision.  Littlejohn employed sophisticated techniques to evade the controls in place to stop such criminal behavior, and the Complaint pleads no specific facts supporting the assertion that Booz Allen failed to exercise ordinary care in the oversight of Littlejohn's work.

*Third*, Count III asserting an invasion of privacy fails because it too is premised on a theory of vicarious liability for Littlejohn's criminal conduct that did not further—and instead harmed—Booz Allen's business interests, was outside the scope of his employment, and was undertaken solely for Littlejohn's own criminal interest. For these reasons and those that follow, Mr. Warren's claims should be dismissed.

## Background[1]

Plaintiff Kelcy Warren is the founder and Executive Chairman of Energy Transfer LP. Compl. ¶ 14. Defendant Booz Allen Hamilton Inc. is a government contractor that provides services to the IRS, among other agencies. Compl. ¶ 15.

Charles Littlejohn is the criminal wrongdoer who took the actions about which Mr. Warren complains. Compl. ¶¶ 4–5. Littlejohn stole tax information relating to Mr. Warren, and disclosed portions of the data to ProPublica, a media outlet. Compl. ¶¶ 4–5. ProPublica published an article based on the information in December 2021. Compl. ¶ 5; ProPublica, *These Real Estate and Oil Tycoons Avoided Paying Taxes for Years*, PROPUBLICA (Dec. 7, 2021), https://www.propublica.org/article/these-real-estate-and-oil-tycoons-used-paper-losses-to-avoid-paying-taxes-for-years (Exhibit 1). Littlejohn stole the information from an IRS database. Compl. ¶¶ 8, 54 (citing the factual basis for Littlejohn's plea, which makes clear that Littlejohn stole the information directly from an IRS database that was controlled by protocols maintained by the IRS). He did so to advance his own political and ideological agenda. Compl. ¶ 43. As alleged in the Complaint, he opposed President Trump and his policies, believed that wealthy Americans had evaded their tax responsibilities, and aimed to use "his access to IRS tax data to advance" these political views. Compl. ¶¶ 43, 49.

---

[1] The facts found in the Complaint are assumed true for purposes of this motion only.

Littlejohn took elaborate steps and used "specialized technical skills" to evade the IRS controls and protocols that were designed to prevent this type of criminal conduct, including controls that could detect and prevent large downloads or uploads from IRS systems and devices. Compl. ¶ 47. He evaded those IRS controls and protocols by uploading tax return information that he stole to a private website that he controlled. Compl. ¶ 47. "He then used a computer to download the data from that private website. From the original data set stored on his personal computer, Littlejohn made copies and stored them on personal data storage devices such as his Apple iPod (which, using his specialized technical skills, he had configured as a personal hard drive)." Compl. ¶ 47.

Littlejohn was prosecuted for his criminal wrongdoing. Compl. ¶ 9. He pleaded guilty to unlawful disclosure of confidential tax return information. Compl. ¶ 9. He was sentenced to five years in prison and will be incarcerated until 2029. *See United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Jan. 31, 2024), ECF No. 35 (Exhibit 2) (judgment).

Littlejohn's plea agreement and accompanying factual basis further explain the steps he took to circumvent controls and evade detection of his activity in the IRS database. Littlejohn admitted: "On or about November 30, 2018, Defendant uploaded this data to a private website that he controlled. He elected to upload the data to a personal, private website—rather than downloading the data to a physical storage device or uploading it to a more conventional remote storage website—to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems." *United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Oct. 12, 2023), ECF No. 9 (Exhibit 3), ¶ 6; *see United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C.

Oct. 12, 2023), ECF No. 8 (Exhibit 4), ¶ 5.[2]  Littlejohn further admitted that his conduct was unauthorized: "In uploading the taxpayer returns and return information to a private website, Defendant used two virtual machines (essentially simulated versions of physical computers).  In order to conceal his activities, Defendant promptly destroyed these machines after he used them to steal the data from IRS. . . .  Defendant acknowledges that he abused a position of trust and employed highly specialized technical skills in furthering his criminal activity.  Defendant's disclosure of the tax returns and return information described above was not authorized, and was knowing and willful."  *Id.* ¶¶ 11, 15, 16.

The Complaint pleads that Littlejohn's conduct was "unprecedented," Compl. ¶ 39, and explains that "[t]he scope and scale of Littlejohn's unlawful disclosures appear to be unparalleled in the IRS's history."  Compl. ¶ 56.

## Legal Standard

Under the familiar standard for Rule 12(b)(6) motions, "a complaint must contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 403 (D. Md. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In other words, the rule demands more than bald accusations or mere speculation."  *Id.*  While a court must accept the factual allegations in the complaint as true, it "is not required to accept legal conclusions drawn from the facts."  *Id.*

---

[2] The factual basis for Littlejohn's plea—attached as Exhibit 3—is incorporated into the Complaint by reference, Compl. ¶ 54 (citing Littlejohn's signed factual basis for his plea), and thus may be considered on this motion.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (noting that courts may "consider documents that are explicitly incorporated into the complaint by reference" in evaluating motions to dismiss); *see also Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, No. 11-cv-00620-ELH, 2013 WL 5566493, at *2 & n.4 (D. Md. Oct. 8, 2013) (taking judicial notice of plea agreement, including "lengthy Factual Stipulation, which recounted in detail [conspirator's] involvement in the Conspiracy").

In adjudicating a motion to dismiss under 12(b)(6), "a court may properly consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits.'"  *Id.* at 404 (quoting *Goines*, 822 F.3d at 166).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167.  "A court reviewing a motion to dismiss also may 'properly take judicial notice of matters of public record,'" including plea agreements.  *Drubetskoy v. Wells Fargo Bank, N.A.*, No. 13-cv-2196-CCB, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1240 (4th Cir. 1989) ("We hold that these guilty pleas are 'not subject to reasonable dispute,' and that these records are properly subject to judicial notice pursuant to Fed. R. Evid. 201(b)(2)."); *Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, No. 11-cv-00620-ELH, 2013 WL 5566493, at *2 & n.4 (D. Md. Oct. 8, 2013) (taking judicial notice of plea agreement).

Additionally, this Court must apply the law of the forum state, including choice-of-law principles, to state law claims arising under this Court's supplemental jurisdiction.  *Doe*, 595 F. Supp. 3d at 418 n.17.  "In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred."  *Id.*

## I.    Count I Should Be Dismissed Because Mr. Warren Does Not and Cannot State a Claim Under Section 7431.

### A.    The Two-Year Statute of Limitations Under 26 U.S.C. § 7431(d) Has Expired.

26 U.S.C. § 7431(a)(2) allows a taxpayer to bring a civil action for damages against any person who is not an employee of the United States and who "knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer" in

violation of 26 U.S.C. § 6103.[3]  Section 7431(d) provides that, "[n]otwithstanding any other provision of law," any claim for wrongful disclosure of tax information under section 7431(a) "may be brought . . . at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."  26 U.S.C. § 7431(d).  The language of section 7431(d), in particular the phrase "[n]otwithstanding any other provision of law," signals that Congress intended to close liability for the government after the prescribed period.  *See Aloe Vera of Am., Inc. v. United States ("Aloe Vera I")*, 580 F.3d 867, 871–72 (9th Cir. 2009) ("[T]he language of section 7431(d) shows that Congress intended the statute of limitations to be absolute.").  In doing so, Congress closed the period of exposure for claims against non-governmental actors as well, because the limitations period "applies both to suits against the United States when employees of the United States violate § 6103, and suits against non-employees when they violate § 6103." *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 91 (D.D.C. 2018) (citations omitted). Thus, Mr. Warren was required to file his claim within two years after discovering the unauthorized disclosure of his information.

Section 7431(d) provides that a claim for wrongful disclosure of tax information accrues, and the limitations period begins to run, on the date when the plaintiff discovers the unauthorized inspection or disclosure, not when the plaintiff discovers the grounds to proceed against a particular defendant.  *See Wood v. Virginia*, 155 F.3d 564, 1998 WL 414019, at *2 (4th Cir. 1998) (stating that plaintiff's section 7431 claim accrued "when [he] was initially informed of the possibility that information from his confidential tax returns had been disclosed without his

---

[3] 26 U.S.C. § 6103 forbids any person who has access to tax "return information" from disclosing the information without authorization.  "Return information" is defined broadly to include, among other things, "a taxpayer's identity" and "the nature, source, or amount of his income."  Littlejohn pled guilty to wrongfully disclosing tax return information.  Ex. 3; Ex. 4.

authority"); *see also United States v. Gordon*, No. 3:18-cv-00734, 2019 WL 6640289, at *4 (W.D. Ky. Dec. 5, 2019); *Dean v. United States*, No. 09-cv-3095-MLC, 2009 WL 4911939, at *3 (D.N.J. Dec. 11, 2009).  Mr. Warren's claim, then, accrued when he discovered that his tax information had been disclosed without his authorization.

The Complaint establishes that Mr. Warren became aware (or through the exercise of reasonable diligence would have become aware) of the unauthorized disclosure no later than December 7, 2021, when ProPublica published an article—titled "These Real Estate and Oil Tycoons Avoided Paying Taxes for Years"—that included Mr. Warren's picture on "[t]he leading page" and divulged "details from Warren's tax returns and return information, including specifics on his real and personal property."  Compl. ¶¶ 5–6; *see* Ex. 1.  The article contained information that clearly qualified as "return information" sufficient to constitute a "disclosure," *see* 26 U.S.C. § 6103(b)(2), (8), and the article's publication alerted Mr. Warren that his tax information had been received by someone (ProPublica) that he knew was not authorized to receive it, *id.* § 6103(a). Based solely on the allegations in the Complaint, therefore, Mr. Warren discovered Littlejohn's disclosures no later than December 7, 2021, and he was required to bring his claim within two years of that date.  He did not do so.  His Complaint was filed on April 29, 2024, well beyond the two-year limitations period, which expired on December 8, 2023.  Accordingly, Count I is time barred and must be dismissed.  *See Patel v. Univ. of Maryland Coll. Park*, No. 20-cv-3070-LKG, 2022 WL 703929, at *2 (D. Md. Mar. 8, 2022) (explaining that dismissal based on statute of limitations is appropriate under 12(b)(6) "if the time bar is apparent on the face of the complaint" (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005))).

**B.    By the Plain Text of Section 7431(a)(2), Mr. Warren Has No Cause of Action Against Booz Allen.**

Section 7431(a)(2) grants a cause of action against the person who inspects or discloses the tax information in violation of section 6103—and that person *only*.  The text provides that "[i]f any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses" tax information, the affected taxpayer may bring a civil action "against *such person*."  26 U.S.C. § 7431(a)(2) (emphasis added).  The text means what it says: the action will lie against the person who does the inspecting or disclosing with the requisite intent.  Thus, Mr. Warren's exclusive remedy for the disclosure of his tax information by a non-government actor is an action against *such* person—Littlejohn.  Booz Allen is simply the wrong defendant.

Courts consistently interpret the provision in subsection (a)(1) consistent with this understanding.  If the person who inspects or discloses a tax return is an officer or employee of the United States, that provision permits the taxpayer to bring a civil suit "against the United States." *Id.* § 7431(a)(1).  Courts have repeatedly held that the *only* proper defendant in such suits is the United States—not the IRS, not the responsible employee, not any other government actor.  *See, e.g.*, *Mid-S. Music Corp. v. Kolak*, 756 F.2d 23, 25 (6th Cir. 1984) ("[U]nder 26 U.S.C. § 7431(a)(1) the only proper defendant . . . is the United States, and . . . no claim is stated against the individual defendants for such a statutory violation." (footnote omitted)); *Ghaffari v. IRS*, No. 5:14-cv-02927-PSG, 2015 WL3630217, at *3 (N.D. Cal. June 10, 2015) ("[T]hat statute only provides a right of action 'against the United States.' Ghaffari does not name the United States as a party." (citing 26 U.S.C. § 7431(a)(1))); *Hassell v. United States*, 203 F.R.D. 241, 244 (N.D. Tex. 1999) ("[Section] 7431 provides that a taxpayer's exclusive remedy for recovering damages arising from unauthorized disclosure of tax information is the filing of a civil action against the

United States. . . . Plaintiff may only recover damages against the United States, not the government employees in their individual capacities."). In contrast, subsection (a)(2) confirms that if the person who inspects or discloses a tax return is *not* an officer or employee of the United States, the named defendant must be "such person" who disclosed the tax returns, and *only* such person.

Here, "such person" who leaked Mr. Warren's tax information was Littlejohn, and Littlejohn alone. That is what Mr. Warren pleads: "Littlejohn began using the IRS databases and systems to extract data about President Trump and other wealthy individuals," Compl. ¶ 45; "Littlejohn learned that IRS protocols could detect and prevent large downloads . . . [and] exploited a loophole in those controls," Compl. ¶ 47; "Littlejohn contacted the New York Times," Compl. ¶ 48; "Littlejohn disclosed an initial set of President Trump's tax records," Compl. ¶ 48; and "Littlejohn unlawfully disclosed Mr. Warren's and thousands of others' confidential returns and return information to ProPublica using a personal storage device," Compl. ¶ 53. Booz Allen did not exploit any loopholes in IRS controls. Booz Allen did not contact the New York Times, nor did it contact ProPublica. Booz Allen did not disclose Mr. Warren's—or any other taxpayer's—information to ProPublica. And Mr. Warren does not allege it did. Booz Allen not only did not engage in any of that conduct, it condemned and condemns it. By Mr. Warren's own pleading, and the incontrovertible facts, Booz Allen is not "such person" against whom Mr. Warren may bring a cause of action under section 7431(a)(2).

Seeking to avoid this clear conclusion, Mr. Warren attempts to graft common-law theories of vicarious liability onto this carefully delineated statutory scheme. But statutory causes of action cannot casually be presumed to incorporate common-law theories like *respondeat superior* that would expand liability *sub silentio*. Rather, a close evaluation of the text and purpose of the statute

10

must demonstrate that Congress intended to expand the statutory cause of action to include vicarious liability.  Here, it does not.

The Supreme Court has repeatedly made clear that a close evaluation of the specific statute at issue is required to determine if common-law theories of vicarious liability can apply to a statutory cause of action.  Different statutory text leads to different results.  For example, there is no *respondeat superior* liability under Title IX.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) ("[W]e conclude that it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* . . . .").  Nor is there vicarious liability under section 1983. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable . . . . under § 1983 on a *respondeat superior* theory.").  The Court has reached similar conclusions after analysis of other federal statutes.  *See, e.g.*, *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("We reach the uncontroversial conclusion, . . . that the text of the 1934 Act does not itself reach those who aid and abet a § 10(b) violation. . . . It is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text.").  On the other hand, the Supreme Court has applied common law agency principles to employer liability under Title VII based on "Congress' decision to define 'employer' to include any 'agent' of an employer."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986) (quoting 42 U.S.C. § 2000e(b)).  Undertaking the same analysis here, it is clear that Congress did *not* intend to import liability-expanding principles into the carefully cabined cause of action in section 7431.

11

Start with the text.  As explained above, section 7431(a)(2) gives clear instruction as to the proper defendant in an action where a person not employed by the government leaks tax data: *that person*.  If Congress wanted to create a cause of action against a leaker's employer, it would have done so—just as it granted a cause of action against the United States for a leak by its employee in the immediately preceding subsection (a)(1).  *Cf. Pinter v. Dahl*, 486 U.S. 622, 650 (1988) ("When Congress wished to create such liability, it had little trouble doing so.").  Or it could have followed the route of Title VII and defined "person" to include "a corporation *or its agent*," such that the willful or negligent disclosure of tax documents by the corporation or its agent could support an action against such corporation or its agent.  *See Meritor Sav. Bank*, 477 U.S. at 72. But it did not do so.  *See* 26 U.S.C. § 7701(a)(1) ("The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.").

The statute's explicit intent requirement further counsels against reading in vicarious liability.  Section 7431 makes only "knowing[]" or "negligen[t]" inspections or disclosures of tax information actionable.  26 U.S.C. § 7431(a)(2).  Yet Mr. Warren improperly attempts to hold Booz Allen liable as though the company *itself*, rather than Littlejohn, provided the tax data to ProPublica.  *See* Compl. ¶ 76 ("Booz Allen, partly or fully through its employee, Mr. Littlejohn, repeatedly violated 26 U.S.C. § 6103"); Compl. ¶ 77 ("Booz Allen made these unlawful inspections and disclosures knowingly"); Compl. ¶ 79 ("Booz Allen, through its employee Charles Littlejohn, disclosed the confidential return information to ProPublica").[4]  Under Mr. Warren's

---

[4] The most Mr. Warren attempts to imply regarding any intent on Booz Allen's part is to claim Booz Allen "willfully fail[ed] to establish appropriate . . . safeguards."  Compl. ¶ 77.  This allegation, amounting to a claim that Booz Allen was "willfully negligent," is as conclusory as it is nonsensical because of the "specialized technical skills" that Littlejohn needed to employ in order to circumvent the IRS's safeguards that were in place and designed to prevent Littlejohn's unauthorized conduct.  *See* Compl. ¶ 47.  Moreover, even if Booz Allen failed to establish adequate

asserted theory, if Littlejohn acted willfully or negligently in committing these criminal acts, Booz Allen would be liable merely by virtue of its status as Littlejohn's employer. Congress did not intend such an absurd result, and Mr. Warren doubtless would not welcome such a result for his own large company.

The context of the other subsections of 7431 further illuminates Congress's intent to limit liability to leakers themselves. For one, the statute's "good faith" exception in subsection (b)(1) makes little sense if employers can be liable without any intent at all, let alone a good or bad one. Similarly, the two-year statute of limitations—which applies to actions against the United States and private persons alike—evidences Congress's desire to limit liability under this section, not expand it *sub silentio*. *See Aloe Vera I*, 580 F.3d at 871 ("[T]he structure of section 7431 indicates that Congress intended the limitation period to restrict the scope of the government's waiver of sovereign immunity.").

Mr. Warren's attempt to circumvent Congress's intent, as evidenced by the statute's text and purpose, is unjustifiable. His claim under section 7431 against Booz Allen thus fails as a matter of law; it should be dismissed.

### C. Booz Allen Cannot be Held Vicariously Liable for Littlejohn's Rogue Criminal Conduct.

Even if principles of vicarious liability could be read into section 7431, Booz Allen cannot be held vicariously liable for Littlejohn's crimes. Littlejohn engaged in criminal wrongdoing to advance his own rogue agenda, far outside the scope of his employment—as evidenced by allegations in the Complaint and the documents incorporated therein. His abhorrent conduct was wholly unauthorized by the company, and was in direct contravention of Booz Allen's purpose

safeguards, that still does not amount to an allegation that Booz Allen improperly disclosed information.

and values, as well as its business and reputational interests.  For these reasons as well, Count I must be dismissed.

In attempting to shoehorn a section 7431 claim against Booz Allen through the doctrine of *respondeat superior*, Mr. Warren stretches that doctrine beyond its breaking point.  Under the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious conduct of its employee, but only when the employee acts within the scope of employment.  Restatement (Third) of Agency §§ 2.04, 7.07 (2006).[5]  To fall within the scope of employment, an employee's acts must be "motivated—at least in part—by an intent to benefit the corporate employer."  *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008).  Thus, acts fall outside the scope of employment when they occur "within an independent course of conduct not intended by the employee to serve any purpose of the employer."  Restatement (Third) of Agency § 7.07; *see also* Restatement (Second) of Agency §§ 228, 235 (1958).

This rule applies with particular force to an employee's criminal acts, because such acts are "not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do."  Restatement (Second) of Agency § 231 cmt. a.  As a general matter, therefore, an employer "cannot be held liable for the criminal acts of an employee, unless they were committed during the course of employment and to further a purpose or interest . . . of

---

[5] For reasons explained above, Booz Allen maintains that the importation of common-law principles into Mr. Warren's federal statutory claim is improper.  Should the Court disagree, Booz Allen relies on common-law principles of vicarious liability articulated in the Restatement of Agency to evaluate Mr. Warren's federal cause of action under 26 U.S.C. § 7431.  *See Brasko v. First Nat'l Bank of Pa.*, No. 20-cv-3489-SAG, --- F. Supp. 3d ---, 2023 WL 7191120, at *12 (D. Md. Nov. 1, 2023) ("The Supreme Court has looked to general common law of agency to determine whether an employer may be vicariously liable for its employees' violations of federal law."); *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) ("To determine these common law principles, courts have traditionally looked to the Restatement of Agency.").  As is explained below, those principles align with Maryland law, which governs Plaintiff's state-law causes of action.

the employer." *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 655 A.2d 1, 25 (Md. App. 1995) (citing William L. Prosser, *Torts* § 70, at 464–65 (4th ed. 1971)); *see also United States v. Hilton*, 701 F.3d 959, 970 (4th Cir. 2012) ("Under established principles of agency law, the scope of an agent's authority is not unlimited and does not extend to actions that harm the interests of the principal.").

This general rule precludes Booz Allen's liability under Count I. Throughout the Complaint, Mr. Warren makes clear that he is relying on Littlejohn's unilateral conduct to establish Booz Allen's liability. Compl. ¶ 39. Mr. Warren alleges that Littlejohn—not Booz Allen— "perpetrated" "a massive data theft," Compl. ¶ 4, "uploaded . . . stolen tax information to a private website," Compl. ¶ 5, and "disclosed portions of the data to ProPublica and other media outlets," Compl. ¶ 5. These actions constitute more than a mere frolic from Littlejohn's job responsibilities—they violated company and IRS policies, the law, and Littlejohn's ethical duties. Mr. Warren pleads as much in the Complaint. He alleges that "Littlejohn aimed to weaponize his access to IRS tax data to advance his radical agenda," Compl. ¶ 43, which is clearly not Booz Allen's business purpose and, indeed, is antithetical to its strongly-held values, Compl. ¶ 15. The factual basis for Littlejohn's plea reinforces that Littlejohn "abused a position of trust and employed highly specialized skills in furthering his criminal activity." Ex. 3 ¶ 15; *see also* Compl. ¶ 47.

Other allegations in the Complaint and related documents paint a fulsome picture of Littlejohn's rogue behavior. Mr. Warren defines Littlejohn's conduct as "unprecedented" and "unparalleled." Compl. ¶¶ 39, 56. Littlejohn sought employment at Booz Allen "to advance his extreme political and ideological agenda." Compl. ¶ 43. He orchestrated "a sophisticated, detailed plan to secretly download . . . tax returns and return information," *United States v. Littlejohn*, No.

1:23-cr-343 (D.D.C. Jan. 16, 2024), ECF No. 23 (Exhibit 5), at 3, "disregard[ing] IRS data security and confidentiality restrictions," Compl. ¶ 88, as well as "regular training about protecting taxpayer data," Ex. 3 ¶ 4.

Nowhere does Mr. Warren allege these actions were intended to benefit Booz Allen. *See* Restatement (Third) of Agency § 7.07(2). Nor could he. As a government contractor tasked with advancing the nation's civil and defense security priorities, Booz Allen's business is built on protecting confidential information. The unauthorized disclosure of such information is antithetical to Booz Allen's identity and its mission and, as Mr. Warren himself acknowledges, actually harms Booz Allen's business reputation. *See* Compl. ¶¶ 58–59. That is precisely why Booz Allen condemned Littlejohn's criminal conduct and proactively cooperated with the government's investigation and prosecution of Littlejohn.

Although the question whether an employee acted within the scope of employment is ordinarily one for the factfinder, where (as here) "there is no conflict in the evidence relating to the question and but one inference can be drawn therefrom, the question is one of law for the court." *Sheets v. Chepko*, 573 A.2d 413, 414 (Md. App. 1990) (quotation omitted); *see* Restatement (Second) of Agency § 228 cmt. d ("The question of whether or not the act done is . . . within the scope of the employment is decided by the court if the answer is clearly indicated."). Because Mr. Warren does not and cannot allege that Littlejohn's unlawful disclosures furthered Booz Allen's purpose, only one reasonable inference can be drawn from the allegations in the Complaint: Littlejohn acted in furtherance of his own rogue and criminal purpose, and not within the scope of his employment. As a result, Count I should be dismissed.

**II.      Count II Should Be Dismissed Because Mr. Warren Does Not and Cannot State a Claim that Booz Allen Negligently Supervised Littlejohn.**

To establish a claim that an employer was negligent in supervising an employee, "the plaintiff must prove the existence of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries." *Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, 1160 (Md. App. 2023) (quotation omitted).  Mr. Warren's negligent supervision claim is deficient in multiple respects.

### A.      Mr. Warren Does Not and Cannot Show Littlejohn Was "Incompetent."

Mr. Warren pleads no facts to show Littlejohn was "incompetent" (the second element). Typically, incompetence is an employee's obvious unsuitability for or inability to perform the tasks required; for example, drunkenness on the job, or criminal convictions for violent acts like rape or assault.  *See Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978) ("That drunkenness on the part of a railroad employe [sic] renders him an incompetent servant will scarcely be disputed." (quoting *Norfolk & W. R.R. Co. v. Hoover*, 29 A. 994, 995 (Md. 1894))); *Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 501 A.2d 35, 40 (Md. 1985) (employer's failure to obtain criminal record showing employee's convictions for assault and indictment for rape relevant to proving employer's negligent hiring of housing inspector who raped tenant).  Mr. Warren baldly asserts that Littlejohn was incompetent—immediately followed by a sentence describing Littlejohn's skillful evasion of IRS controls to disclose tax data without detection.  *See* Compl. ¶¶ 88–89.  But beyond that, it is not clear which of Littlejohn's attributes Mr. Warren thinks renders him "incompetent" under Maryland law.

The closest the Complaint comes to identifying a specific "incompetency" is the suggestion that Littlejohn "pursued employment at Booz Allen and work on IRS projects for improper political purposes and to malign wealthy Americans."  Compl. ¶ 88.  Besides being yet another baseless assertion, that falls far short of actionable "incompetence."  Someone's disapproval of a sitting president or thoughts on tax policy do not render him categorically incompetent for employment.  Nor should they.  Americans across the political spectrum pride themselves on the ability to think independently and speak freely; tort law is not a mechanism for mandating political orthodoxy.

**B.**   **Mr. Warren Does Not Adequately Plead that Booz Allen Did Know or Should Have Known About Any of Littlejohn's Problematic Attributes.**

The Complaint offers little more than vague and generalized allegations that Booz Allen had any actual or constructive notice of Littlejohn's purported incompetence.  In one instance, Mr. Warren plainly asserts that "Booz Allen had or should have had knowledge of Littlejohn's conduct or general character which would have caused a prudent employer in these circumstances to have taken action."  Compl. ¶ 89.  But from that rote recitation of tort law basics, Booz Allen cannot tell what "conduct or general character" Mr. Warren is referring to.  *See Doe*, 595 F. Supp. 3d at 403 ("If a complaint provides no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' it is insufficient." (quoting *Twombly*, 550 U.S. at 555)).  Nor does the Complaint's claim that Booz Allen should have known that "Littlejohn was capable of inflicting harm through public disclosure of private information" offer any clarity as to which of Littlejohn's qualities Booz Allen should have been aware.  Compl. ¶ 89.  This vague allegation could apply to a large portion of the federal workforce.  *See Doe*, 595 F. Supp. 3d at 403 ("'[A]n unadorned, the-defendant-unlawfully-harmed-me accusation' does not state a plausible claim of relief." (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

At its most specific, the Complaint alleges "[o]n information and belief" that "Littlejohn made known to Booz Allen supervisors and coworkers his extreme political views, his contempt for the wealthy, and his criticisms of perceived tax advantages used by the wealthy," Compl. ¶ 89, and that "Booz Allen knew of Littlejohn's extreme political views and his desire to use access to IRS data to promote those views through public disclosure of wealthy Americans' tax information," Compl. ¶ 44.  But these bald assertions are devoid of factual support and, as such, cannot sustain Mr. Warren's negligent supervision claim.  *See Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020) ("[C]onclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009))); *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023) ("Although a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory.").  Mr. Warren fails to allege, for example, when Littlejohn purportedly informed Booz Allen of his political views or his criminal intentions, whom he supposedly told, and under what circumstances such statements were made.  Mr. Warren also fails to explain what might have prompted Littlejohn to apprise Booz Allen of his planned scheme—a notable omission given that the Complaint and related documents are replete with details regarding the steps Littlejohn took to *hide* his illicit activities from Booz Allen and the IRS.  *See, e.g.*, Compl. ¶ 47 (Littlejohn "exploited a loophole in [IRS] controls," "upload[ed] the stolen tax returns and return information . . . to a private website that he controlled," and "made copies and stored them on personal data storage devices"); Ex. 3 ¶¶ 6, 11, 14.

Without even basic supporting facts, Mr. Warren's claim that Booz Allen knew of Littlejohn's political views and potential criminal proclivity falls well short of plausibility.  *See Kashdan*, 70 F.4th at 702 (finding plaintiff's allegations of Title IX discrimination "far too

19

speculative" and "devoid of facts supporting the allegations that were pleaded upon information and belief" (quotation omitted)); *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) ("Plaintiffs . . . do not plead factual information that would make it plausible for the Court to infer that transgender service members are being told that they may not be able to reenlist."). While allegations may undoubtedly be made on information and belief in appropriate cases, here Mr. Warren simply failed to "include[] sufficient data to justify [such] allegation[s]" and as a result cannot save his deficient negligent supervision claim. *See Van Buren*, 611 F. Supp. 3d at 37 ("Without any basis for th[e] allegation [that Walmart failed to remit collected sales tax and to the state], the house of cards on which Mr. Van Buren has built his affirmative misrepresentation claims collapses.").

### C.    Neither Littlejohn's Supposed "Incompetency" Nor Booz Allen's Supervision of Its Employee Proximately Caused Mr. Warren's Alleged Injury.

Count II is further doomed by Mr. Warren's inability to demonstrate that either Littlejohn's purported incompetency, or Booz Allen's purportedly negligent supervision of its employee, caused Mr. Warren's alleged injury. "When evaluating whether an act or omission was the proximate cause for an injury, the Court must examine whether there was (1) causation in fact and (2) a legally cognizable cause." *Young v. Hous. Auth. of Balt. City*, No. 17-cv-713-MJG, 2017 WL 5257127, at \*11 (D. Md. Nov. 13, 2017). To be a legally cognizable cause, the harm to Mr. Warren must fall "within a general field of danger that the actor should have anticipated or expected." *Id.* (quoting *Pittway Corp. v. Collins*, 973 A.3d 771, 787 (Md. 2009)). Additionally, "the very quality that renders an employee 'incompetent' must be the cause of the harm." *Perry v. Asphalt & Concrete Servs., Inc.*, 133 A.3d 1143, 1157 (Md. 2016).

But Littlejohn's political views—the only concrete incompetency Mr. Warren points to— did not make his actions foreseeable to Booz Allen. For one, using Littlejohn's political views as

a proxy for dangerousness is both over and underinclusive—and is inconsistent with American principles of free speech, as Mr. Warren likely would agree.  Not all employees who express disapproval of a sitting president, or even disdain for the tax practices of "recognized leader[s]" of industry like Mr. Warren, Compl. ¶ 14, should be considered imminent threats to sensitive data. If that were the standard, half the population would be on a watch list, and the government would have to replace half its workforce each time a new political party took the White House. Conversely, not all potential thieves of IRS data are motivated by their views on tax policy.  Some could be motivated, for example, by personal financial gain.  Such a misalignment of risk belies the anti-free-speech suggestion that Littlejohn's politics alone would render his crimes foreseeable.

Furthermore, the causal chain connecting Littlejohn's opinions about President Trump to the unlawful disclosure of Mr. Warren's tax data is fatally weak, even if Littlejohn's political views were indeed as publicized and radical as Mr. Warren claims.  The suggestion that Booz Allen should have known that an employee would unlawfully leak private tax data to the press because it knew about that employee's political views requires a long chain of inferences.  Think of the steps in this improbable story.  In Mr. Warren's view, from the moment Booz Allen allegedly became aware that Littlejohn "viewed President Trump as a dangerous threat to democracy," Compl. ¶ 43, it should have known that Littlejohn would act on those beliefs by: designing specific queries to pull tax data without raising alarms; discovering IRS safeguards that would detect and prevent unauthorized downloads of data; circumventing those safety protocols by building a private website; downloading those raw data files onto his own computer and copying them to portable storage devices; destroying virtual computers to conceal his criminal activity; and

anonymously transmitting the files to ProPublica.[6]  Whatever causal connection that may be, it certainly is not proximate—and it dangerously is premised on the concept that certain political views are impermissible.  Mr. Warren makes no attempt to plead a clearer link between the "quality" that rendered Littlejohn "incompetent" and the unlawful disclosure, beyond the unelaborated assertion that "Booz Allen's negligent supervision of Mr. Littlejohn proximately caused Mr. Warren's alleged injury by allowing the public disclosure of his tax returns and return information."  Compl. ¶ 100.

Nor did Booz Allen's supervision of Littlejohn as its employee proximately cause Mr. Warren's alleged injury.  First, the disclosure of Mr. Warren's tax information by Littlejohn did not fall remotely "within a general field of danger" that Booz Allen should have foreseen.  *Young*, 2017 WL 5257127, at *11.  Littlejohn's multiple tenures at Booz Allen gave no indication he would be an unfit employee.  *See* Compl. ¶ 40.  And the Complaint itself emphasizes how "unprecedented" Littlejohn's leak was, Compl. ¶ 39, and claims that the "disclosures appear to be unparalleled in the IRS's history," Compl. ¶ 56.  So not only was there no indication that *Littlejohn* would engage in such criminal activity, there was no precedent of *anyone* engaging in activity of such scope.

Booz Allen's actions also could not have proximately caused Mr. Warren's alleged injury if reasonable supervision would not have revealed Littlejohn's criminality.  Under Maryland law, an employer's omission does not proximately cause a third party's injury if a "reasonable inquiry . . . would not have provided the employer with knowledge of any adverse tendencies" of the employee.  *Perry*, 133 A.3d at 1158.  It is not clear what reasonable supervision or controls

---

[6] Moreover, none of these unanticipatable actions would necessarily lead to the disclosure of Mr. Warren's tax returns or those of other wealthy individuals rather than just those of President Trump.

Booz Allen could have implemented that would have revealed Littlejohn's scheme.  For one, Littlejohn stole the information from a database owned and controlled by the IRS, not Booz Allen. *See* Compl. ¶ 8 ("[E]ven Congress confirmed there was little doubt that the leaked information . . . came from inside the IRS" (quotation omitted)); Compl. ¶ 47 (explaining Littlejohn "exploited a loophole" in "*IRS* protocols that could detect and prevent large downloads or uploads from *IRS* systems and devices" (emphases added)); Ex. 3 ¶ 6.

Furthermore, Littlejohn had to undertake sophisticated technical steps to circumvent controls that might have alerted Booz Allen of his criminal wrongdoing.  Littlejohn admitted: "On or about November 30, 2018, Defendant uploaded this data to a private website that he controlled.  He elected to upload the data to a personal, private website—rather than downloading the data to a physical storage device or uploading it to a more conventional remote storage website—to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems." Ex. 3 ¶ 6.  As the Complaint explains, Littlejohn even went so far as to use his "specialized technical skills" to configure an Apple iPod as a personal hard drive to remove the data without detection.  Compl. ¶ 47.

Littlejohn further admitted that he took steps to conceal his criminal activities, and that he engaged in unauthorized conduct: "In uploading the taxpayer returns and return information to a private website, Defendant used two virtual machines (essentially simulated versions of physical computers).  In order to conceal his activities, Defendant promptly destroyed these machines after he used them to steal the data from IRS. . . .  Defendant acknowledges that he abused a position of trust and employed highly specialized technical skills in furthering his criminal activity.  Defendant's disclosure of the tax returns and return information . . . was not authorized, and was knowing and willful." Ex. 3 ¶¶ 11, 15, 16.  In light of these uncontroverted facts, it is

clear that Booz Allen could not have unearthed Littlejohn's reprehensible actions with reasonable supervision, and thus any alleged failure to so supervise did not proximately cause Mr. Warren's injury.

For the above reasons, the Complaint cannot plead the elements of negligent supervision— in fact, it pleads allegations that negate the relevant elements. Count II should be dismissed.

## III. Count III Should Be Dismissed Because Booz Allen Did Not Invade Mr. Warren's Privacy, Littlejohn Did.

Count III, like Count I, hinges on the theory that Booz Allen is vicariously liable for the conduct of Littlejohn. *See* Compl. ¶¶ 105–108. But again, as a matter of law, Booz Allen cannot be liable for Littlejohn's rogue criminal conduct.

To plead invasion of privacy under Maryland law, Mr. Warren must allege, among other things, that Booz Allen gave publicity to a matter concerning his private life. *See Furman v. Sheppard*, 744 A.2d 583, 588 (Md. App. 2000). Nowhere in the Complaint does Mr. Warren allege that Booz Allen itself unlawfully publicized his tax information. Rather, Mr. Warren alleges that Booz Allen, "acting through Mr. Littlejohn," publicized his tax information to ProPublica. Compl. ¶¶ 105–108. Mr. Warren's invasion of privacy claim, like his section 7431 claim, therefore depends on the doctrine of *respondeat superior*.

Under Maryland law, as under the Restatement (Third) of Agency, "[t]he doctrine of respondeat superior allows an employer to be held 'vicariously liable for the tortious conduct of an employee'" only when the "'employee is acting within the scope of the employment relationship.'" *Sheets*, 573 A.2d at 414 (quoting *Dhanraj v. Potomac Elec. Power Co.*, 506 A.2d 224, 226 (Md. 1989)). For conduct to be within the scope of employment, it "must have been in furtherance of the employer's business and authorized by the employer." *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003). "[W]here an employee's actions are personal, or where they

represent a departure from furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Sawyer v. Humphries*, 587 A.2d 467, 471 (Md. 1991); *see also Lins v. United States*, No. 17-cv-2163-ELH, 2018 WL 2183393, at *12 (D. Md. May 10, 2018) ("Maryland law is unambiguous: Actions taken for personal reasons, and not to advance the employer's business, are outside the scope of employment.").

A straightforward application of this settled principle precludes Booz Allen's liability under Count III.  In alleging Booz Allen's liability for invasion of privacy, the Complaint relies exclusively on Littlejohn's unilateral, self-interested conduct.  *E.g.*, Compl. ¶ 5 (Littlejohn "disclosed portions of the data to ProPublica and other media outlets"); Compl. ¶ 43 ("Littlejohn aimed to weaponize his access to IRS tax data to advance his radical agenda"); Compl. ¶ 52 ("Littlejohn contacted and discussed with ProPublica the possibility of disclosing [Mr. Warren's] tax returns and return information"); Compl. ¶ 56 ("The scope and scale of Littlejohn's unlawful disclosures appear to be unparalleled in the IRS's history."); *see also* Ex. 3 ¶ 4 (noting that Littlejohn "received regular training about protecting taxpayer data").

Mr. Warren does not and cannot allege that Littlejohn's conduct furthered Booz Allen's business.  *See Sawyer*, 587 A.2d at 471.  The Complaint likely is silent on this point because, as explained above, Littlejohn's conduct, including his unauthorized sharing of Mr. Warren's tax information with ProPublica, harmed Booz Allen's business interests, including its interest in advancing the nation's civil and defense security priorities.  *See* Compl. ¶¶ 58–59.

Maryland law, like federal common law, provides that where "there is no conflict in the evidence relating to the question [of vicarious liability] and but one inference can be drawn therefrom, the question is one of law for the court."  *Sheets*, 573 A.2d at 414 (quotation omitted).

Thus, because Mr. Warren does not and cannot allege that Littlejohn's publication of Mr. Warren's tax information furthered Booz Allen's purposes, the only reasonable inference that can be drawn from the Complaint's allegations is that Littlejohn acted outside the scope of his employment.  As a result, Count III should be dismissed.[7]

### Conclusion

For the foregoing reasons, Booz Allen respectfully requests that the Complaint be dismissed in its entirety.

Dated: May 24, 2024                              Respectfully submitted,

                                                 WILLIAMS & CONNOLLY LLP

                                                 By:  _/s/ Robert A. Van Kirk_____
                                                 Robert A. Van Kirk (*pro hac vice*)
                                                 Steven M. Cady*
                                                 Andrew L. Hoffman*
                                                 Ilana Frier (Bar No. 30515)
                                                 Natalie R. Schmidt*
                                                 Matthew Cunningham*
                                                 680 Maine Avenue SW
                                                 Washington, DC  20024
                                                 Telephone: (202) 434-5000
                                                 Facsimile: (202) 434-5029
                                                 rvankirk@wc.com
                                                 scady@wc.com

                                                 * *Pro hac* application forthcoming

                                                 *Counsel to Booz Allen Hamilton Inc.*

---

[7] Should the Court agree that the federal claim in Count I should be dismissed, it may also choose to decline to exercise supplemental jurisdiction over Mr. Warren's state law claims in Counts II and III.  *See* 28 U.S.C. § 1367(c)(3); Compl. ¶ 12 (invoking this Court's jurisdiction under 28 U.S.C. § 1331 as to Count I and 28 U.S.C. § 1367 as to the other two Counts).