**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| Kelcy Warren, | |
| *Plaintiff*, | Case No. 8:24-cv-1252-LKG |
| v. | **Oral Argument Requested** |
| Booz Allen Hamilton Inc. | |
| *Defendant*. | |

**Defendant Booz Allen Hamilton Inc.'s
Reply in Support of Its Renewed Motion to Dismiss**

**Table of Contents**

Introduction................................................................................................................1

Argument ..................................................................................................................1

I.      Mr. Warren Does Not and Cannot State a Claim Under Section 7431...............1

        A.      Mr. Warren's Claim Accrued in December 2021, When He Discovered
                That His Tax Information Had Been Disclosed to ProPublica Without
                Authorization. ...............................................................................................1

        B.      Section 7431 Forecloses Vicarious Liability, and Mr. Warren Cannot
                Plausibly Plead That Booz Allen Is Directly Liable for Littlejohn's
                Misconduct....................................................................................................5

        C.      Mr. Warren Cannot Plausibly Allege That Booz Allen Is Vicariously
                Liable. ............................................................................................................7

II.     Mr. Warren Does Not and Cannot State a Claim for Negligent Supervision. ...................10

        A.      Littlejohn's Political Views are Not a Legally Cognizable Incompetency............10

        B.      The First Amended Complaint Does Not Adequately Allege That Booz
                Allen Knew About Littlejohn's Political Views or Desire to Disclose Tax
                Data. ..............................................................................................................11

        C.      Littlejohn's Independent Criminal Acts Were Not Foreseeable...........................13

III.    Count III Should Be Dismissed Because Booz Allen Did Not Invade Mr.
        Warren's Privacy, Littlejohn Did...................................................................................14

Conclusion ...................................................................................................................15

## Table of Authorities

### Cases

*Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867 (9th Cir. 2009)............................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................12

*Clark v. United States*, No. 21-cv-82056, 2022 WL 3017383 (S.D. Fla. July 18, 2022) ...............5

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024)....................2, 3

*Dodd v. United States*, 545 U.S. 353 (2005)...................................................................................3

*Dolphus v. Servis One, Inc.*, No. 16-cv-1075, 2018 WL 11425442 (D. Md. Aug. 3, 2018) ...........4

*Fearnow v. Chesapeake & Potomac Tel. Co. of Maryland*, 655 A.2d 1 (Md. Ct. Spec. App. 1995) ........................................................................................................................15

*Grayson O Co. v. Agadir Int'l, LLC*, 856 F.3d 307 (4th Cir. 2017) ................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................11, 12

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ............................................................1

*Loveless v. Estevez*, No. 01985, 2019 WL 4187465 (Md. Ct. Spec. App. Sept. 3, 2019) ...9, 10, 15

*McKenzie-El v. IRS*, No. 19-cv-1956, 2020 WL 902546 (D. Md. Feb. 24, 2020) .........................5

*Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250 (2016) ......................................4

*Merck & Co., Inc. v. Reynolds.* 559 U.S. 633 (2010) ....................................................................2

*Norris v. PNC Bank, N.A.*, No. 20-cv-3315, 2022 WL 2193303 (D. Md. June 16, 2022) .............8

*Rotkiske v. Klemm*, 589 U.S. 8 (2019) ...........................................................................................1

*Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991) .........................................................................15

*Simpson v. United States*, No. 90-cv-300021, 1991 U.S. Dist. Lexis 15153 (N.D. Fla. Oct. 9, 1991) ..............................................................................................................................1, 2

*Tall v. Bd. of Sch. Comm'rs of Balt. City*, 706 A.2d 659 (Md. Ct. Spec. App. 1998) ....................8

*United States v. Singh*, 518 F.3d 236 (4th Cir. 2008) .....................................................................7

*Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30 (D. Md. 2020) ..................................................12

*Vaughn v. Perea*, No. 20-7532, 2021 WL 5879176 (4th Cir. Dec. 13, 2021) ..............................12

*Young v. Hous. Auth. of Balt. City*, No. 17-cv-713, 2017 WL 5257127 (D. Md. Nov. 13, 2017) ........................................................................................................................14

**Statutes and Other Authorities**

26 U.S.C. § 7431(a)(2) ...................................................................................................5, 6

26 U.S.C. § 7431(d) .......................................................................................................1, 2, 3

26 U.S.C. § 7432(d)(3) .........................................................................................................3

26 U.S.C. § 7433(d)(3) .........................................................................................................3

26 U.S.C. § 7435(d) ..............................................................................................................3

28 U.S.C. § 1658(b)(1) ..........................................................................................................2

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (3d ed. 2004) ................................................................................................................................12

Restatement (Third) Of Agency § 7.03 (2006) ....................................................................6

## Introduction

Mr. Warren's opposition fails to grapple with the fundamental reason why the First Amended Complaint fails:  the Complaint does not plausibly allege that Littlejohn's unlawful disclosure to ProPublica was authorized by or benefitted Booz Allen.  That failure is dispositive of Mr. Warren's case.  For that reason, and the additional reasons articulated in Booz Allen's motion, Mr. Warren's First Amended Complaint should be dismissed in its entirety with prejudice.

## Argument

### I.      Mr. Warren Does Not and Cannot State a Claim Under Section 7431.

#### A.      Mr. Warren's Claim Accrued in December 2021, When He Discovered That His Tax Information Had Been Disclosed to ProPublica Without Authorization.

To determine when a limitations period begins to run, a court must "begin by analyzing the statutory language." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (citation omitted).  If the statutory text is unambiguous, as is the case here, "this first step of the interpretive inquiry is [the court's] last."  *Id.*  A Section 7431 claim must be filed "within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."  26 U.S.C. § 7431(d).

Mr. Warren argues in his opposition that Section 7431(d) creates a broad discovery rule.  But his opposition ignores the portion of the statute that limits what must be discovered.  By the statute's plain terms, the clock starts when a plaintiff learns of "the unauthorized inspection or disclosure," not when he discovers "all the necessary facts to maintain a 'complete and present cause of action.'"  *Contra* Opp'n at 11.[1]  The First Amended Complaint establishes that Mr.

---

[1]  The IRS Chief Counsel's Advisory upon which Mr. Warren relies is not to the contrary.  Opp'n at 10.  Setting aside the fact that the Advisory is not binding on this Court, *cf. Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), the Chief Counsel connects the limitations period to the discovery of "the injury"—not necessarily the identity of who caused the injury—and cites favorably *Simpson v. United States*, No. 90-cv-300021, 1991 U.S. Dist. Lexis 15153, at *19 (N.D.

Warren became aware of the unauthorized disclosure of his tax information no later than December 7, 2021.  FAC ¶¶ 5–6.  The statute began to run on that date.

Mr. Warren's arguments to the contrary fail.  In support of his contention that a plaintiff must have facts sufficient to state a claim before the limitations period under Section 7431(d) begins to run, Mr. Warren invokes *Merck & Co., Inc. v. Reynolds*.  559 U.S. 633 (2010).  But *Merck* is readily distinguishable.  There, the Supreme Court considered 28 U.S.C. § 1658(b)(1), which provides that a securities fraud claim "may be brought not later than . . . 2 years after the discovery of the facts constituting the violation." *Id.* at 638.  The question presented was whether scienter-related facts were among the "facts constituting the violation" that needed to be discovered for the claim to accrue.  The Court answered in the affirmative: scienter "is assuredly a 'fact'" that "'constitut[es]' an important and necessary element of a § 10(b) 'violation.'" *Id.* at 648.

Unlike Section 1658(b)(1), Section 7431(d) does not require that a plaintiff discover all "the facts constituting the violation" to trigger the limitations period.  "That textual difference matters." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2453 (2024). If Section 7431(d) specified all "facts constituting the violation," that would include facts about the identity of the person who made the disclosure.  But that is not what the statute says.  Instead, it states that the limitations period begins when a plaintiff discovers "the unauthorized inspection or disclosure"—no more, no less.  *See, e.g.*, *Simpson v. United States*, No. 90-cv-300021, 1991 U.S. Dist. Lexis 15153, at *19 (N.D. Fla. Oct. 9, 1991) (stating that "[t]he period of limitations for bringing suit under Section 7431 is two years from the date of discovery of the

---

Fla. Oct. 9, 1991), which, as noted below, tethers the running of the limitations period to the discovery of the unauthorized disclosure, full stop.

unauthorized disclosure of return information," and making no mention of the identity of the disclosing party).  The Court should reject Mr. Warren's attempt to disregard this unambiguous rule in favor of one "divined from other statutes with very different language."  *Corner Post*, 144 S. Ct. at 2454; *see* Opp'n at 11.

Mr. Warren's attempt to read additional requirements into Section 7431(d) is "particularly inappropriate" given that "Congress has shown that it knows how to adopt" a provision like the one Mr. Warren proposes.  *Corner Post*, 144 S. Ct. at 2453 (quoting *Rotkiske*, 589 U.S. at 14). Indeed, in the provisions immediately surrounding Section 7431, Congress did just that.  *See* 26 U.S.C. § 7432(d)(3) ("[A]n action to enforce liability created under this section may be brought . . . only within 2 years after the date the right of action accrues."); *id.* § 7433(d)(3) (same); *id.* § 7435(d) (similar).  Clearly Congress knew how to incorporate a traditional discovery rule when legislating Section 7431.  It chose not to do so.

Frustrated by the text, Mr. Warren's opposition argues it would be unfair if his cause of action accrued in December 2021.  *See* Opp'n at 15.  But courts "are not free to rewrite the statute that Congress has enacted," even when Congress's decision leads to "harsh results."  *Dodd v. United States*, 545 U.S. 353, 359 (2005).  "When the statute's language is plain, the sole function of the courts is to enforce it according to its terms."  *Id.* (cleaned up).  What's more, there's good reason to conclude that Congress intended the statute of limitations period to be absolute:  the provision limits the government's waiver of sovereign immunity.  *See Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 871–72 (9th Cir. 2009) ("The inclusion of the phrase '[n]otwithstanding any other provision of law' at the beginning of [Section 7431(d)] requires that an action may be brought only within the two-year period.  No provision of law may abrogate that prescription, including any provision that may provide for equitable tolling or waiver.").  In any

event, Mr. Warren discovered Littlejohn's unauthorized disclosure, and that Booz Allen was Littlejohn's employer, in September 2023, and thus could have filed his claim within the limitations period, which belies any assertion that applying the statute's plain language would be unjust.  FAC ¶ 56.[2]

Mr. Warren alternatively argues that even if Booz Allen is right about the limitations period, "only a claim for the handful of disclosures specifically revealed by the ProPublica article would have accrued in December 2021."  Opp'n at 13.  But those are the only disclosures alleged in the First Amended Complaint.[3]  The First Amended Complaint pleads that Littlejohn made a single disclosure to ProPublica "using a personal storage device" sometime "from September 2020 to November 2020," and "provided ProPublica with the password" "in or about November 2020."  FAC ¶ 53.  No other disclosures are plausibly alleged.  Mr. Warren seizes on the fact that ProPublica "published nearly 50 articles" based on the disclosed information, *id.*, but the number of articles published says nothing about how many *disclosures* Littlejohn made.  And in any event, insofar as Mr. Warren alleges that Littlejohn made additional disclosures, such allegations fall woefully short of the pleading standard relied upon by Mr. Warren and recited by this Court:  A

---

[2]  To the extent Mr. Warren contends that equitable tolling saves his claim, that argument has been waived.  The discovery rule and equitable tolling are distinct concepts.  Mr. Warren's opposition is limited to the first issue.  Mr. Warren thus has waived any equitable tolling argument.  *See Grayson O Co. v. Agadir Int'l, LLC*, 856 F.3d 307, 316 (4th Cir. 2017).  Regardless, equitable tolling "is a 'guarded and infrequent' remedy," *Dolphus v. Servis One, Inc.*, No. 16-cv-1075, 2018 WL 11425442, at *2 (D. Md. Aug. 3, 2018) (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)), that Mr. Warren is not entitled to because he did not diligently pursue his rights and has not demonstrated that some extraordinary circumstance prevented timely filing, *see Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255 (2016).

[3]  Mr. Warren does not respond to Booz Allen's argument that any alleged disclosure of his tax information to The New York Times fails both because it fails to specify a date and is incompatible with the factual basis for Littlejohn's plea and thus cannot be credited.  *See* Mot. at 9 n.6.

plaintiff must "specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *McKenzie-El v. IRS*, No. 19-cv-1956, 2020 WL 902546, at *13 (D. Md. Feb. 24, 2020) (cleaned up).  A suggestion that "additional unreferenced documents" were provided to ProPublica at unspecified times is insufficient.  *See* Opp'n at 13–14.  The Court must dismiss Mr. Warren's Section 7431 claim as untimely.[4]

### B. Section 7431 Forecloses Vicarious Liability, and Mr. Warren Cannot Plausibly Plead That Booz Allen Is Directly Liable for Littlejohn's Misconduct.

Mr. Warren's opposition attacks a straw man.  Nowhere in its motion to dismiss did Booz Allen argue Section 7431 does not apply to corporations merely because of their corporate personhood.  To the contrary, Booz Allen explained that the plain text of the statute provides a cause of action against those persons—natural or corporate—who *themselves* disclosed confidential tax information: "Section 7431(a)(2) grants a cause of action against the person who inspects or discloses the tax information in violation of section 6103—and that person *only*."  Mot. at 10.  This argument flows from the unambiguous text of the statute, which provides that if "*any person*" unlawfully inspects or discloses confidential tax information, the cause of action lies against "*such person*."  26 U.S.C. § 7431(a)(2) (emphases added).

As Booz Allen's motion makes clear, this language forecloses *vicarious* liability under the statute—*i.e.*, holding employers liable *merely* due to the employer-employee relationship.  Under

---

[4] *Clark v. United States*, No. 21-cv-82056, 2022 WL 3017383 (S.D. Fla. July 18, 2022), is readily distinguishable.  *See* Opp'n at 14.  There, the Government relied on letters attached to its motion to dismiss—rather than allegations in the complaint—to establish Clark's discovery of the disclosures.  *Clark*, 2022 WL 3017383, at *2.  The court "decline[d] to consider the letters" on a motion to dismiss.  *Id.* at *3.  Here, by contrast, Booz Allen relies entirely upon Mr. Warren's own allegations in the First Amended Complaint to establish that he learned of the disclosure of his tax information no later than December 2021.  FAC ¶¶ 5–6.

basic principles of agency law, vicarious liability allows an employer to be sued for the torts of its employee acting within the scope of his employment even if the employer is not at fault.  *See* Restatement (Third) Of Agency § 7.03 (2006) ("[D]irect liability requires fault on the part of the principal whereas vicarious liability does not require that the principal be at fault.").  But the plain text of Section 7431 demonstrates that individuals or companies can only be sued if *they themselves* leak tax information.  Thus, a plaintiff could sue Littlejohn for disclosing a tax return if Littlejohn knowingly or negligently disclosed the return (which he did).  And a plaintiff could sue Booz Allen if Booz Allen knowingly or negligently disclosed the return (which it did not).  But a plaintiff cannot sue Booz Allen for Littlejohn's disclosure of a tax return *merely* because Booz Allen employed Littlejohn.  Mr. Warren's attempt to hold Booz Allen vicariously liable for Littlejohn's actions effectively amends the statute to read "such person *or his employer*" and thus fails as a matter of law, regardless of whether Littlejohn was acting outside the scope of his employment.[5]

Mr. Warren's opposition appears to concede this.  He admits that "a plaintiff still must prove that the employer itself either 'knowingly, or by reason of negligence,' caused the unlawful . . . disclosure."  Opp'n at 16 (quoting 26 U.S.C. § 7431(a)(2)) (emphasis omitted); *see also* Opp'n at 17 (raising as a "separate question" "whether [Booz Allen's] own negligence was a proximate cause of Littlejohn's actions" (emphasis omitted)).  Such a requirement is plainly indicative of direct liability, not vicarious liability.

Mr. Warren's allegation of "direct" liability fails too.  As detailed in Booz Allen's motion to dismiss, Mot. at 12, the First Amended Complaint added bald new allegations, absent from the

---

[5]  Mr. Warren makes no attempt to respond to Booz Allen's argument that the Supreme Court requires clear direction from Congress before reading theories of vicarious liability into statutory schemes.  *See* Mot. 13–14.

original Complaint, that suggest direct liability. *See* FAC ¶ 82 ("Booz Allen, both through its own actions and through its employee, Littlejohn, unlawfully inspected and disclosed Mr. Warren's tax returns[.]"); FAC ¶ 83 (similar). Devoid of factual support, these allegations do not point to any action that *Booz Allen* took to remove the data from the IRS systems or disclose it to the media. In fact, they are contradicted by the rest of the First Amended Complaint, which *itself* repeatedly alleges that Littlejohn, not Booz Allen, unlawfully inspected and disclosed Mr. Warren's tax returns. *See* FAC ¶¶ 45, 47–48, 53; Mot. at 11–12. And there is zero support in fact or logic for the speculation that Booz Allen "may well have . . . requested" that Littlejohn commit a criminal act. Opp'n at 18. These unsupported and conclusory allegations fail to meet basic pleading standards and are insufficient to create a legitimate fact issue.

Mr. Warren's opposition argues in the alternative that Booz Allen can be directly liable under Section 7431 if it negligently supervised Littlejohn. Opp'n at 19. But even Mr. Warren admits that this theory is redundant of his negligent supervision claim in Count II. *Id.* Because that claim rests on utter conjecture and because Littlejohn's independent actions, not Booz Allen's, proximately caused the disclosure, *see infra* Section II, this too fails as a matter of law.

### C.    Mr. Warren Cannot Plausibly Allege That Booz Allen Is Vicariously Liable.

Even if vicarious liability was available under Section 7431, the First Amended Complaint fails to plausibly allege that Littlejohn's criminal actions were intended to benefit Booz Allen, a necessary predicate to establishing vicarious liability. *See United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008). For starters, Mr. Warren's new allegation that Booz Allen directed Littlejohn to break the law and disclose Mr. Warren's tax information to ProPublica is both incredible and illogical, and should be discarded. *See* Mot. at 18–19. Mr. Warren is not entitled to a fishing expedition in search of non-existent facts supporting the groundless theory that Booz Allen

instructed an employee to engage in criminal conduct, jeopardizing Booz Allen's reputation and business.

Perhaps recognizing this, Mr. Warren's opposition contends that Littlejohn engaged in other, non-criminal conduct that "may well have been requested by his employer and motivated in part to benefit Booz Allen."  Opp'n at 18; *see also* Opp'n at 26–28 (pointing to other factual questions that allegedly preclude dismissal).  As a result, he argues, Littlejohn's criminal conduct also somehow comes within the scope of employment.  Not so.  For one thing, the implausible new allegation that Littlejohn "may well have" have performed certain acts at Booz Allen's request is wholly baseless, and cannot survive a motion to dismiss.  For another, even if Booz Allen in fact directed or permitted Littlejohn to access IRS systems or review taxpayer data, that in no way suggests that Booz Allen approved of—much less benefitted from—Littlejohn's criminal misuse of that information.  *See Tall v. Bd. of Sch. Comm'rs of Balt. City*, 706 A.2d 659, 671 (Md. Ct. Spec. App. 1998) (holding that physical abuse of student by teacher was not within scope of employment and explaining that, while "there are legitimate occasions when a teacher may have to touch a student," such legitimate physical contact "in no way constitutes implied authority" to physically discipline a child); *Norris v. PNC Bank, N.A.*, No. 20-cv-3315, 2022 WL 2193303, at *29 (D. Md. June 16, 2022) (explaining that employee hired "to perform property preservation services" was not authorized to "damage the residential property or remove valuable items from it," and concluding that such "intentional theft, damage, [and] destruction" was categorically outside the scope of employment).  Mr. Warren's proposed rule would subject employers to liability (or, at a minimum, open the door to costly discovery) for any manner of outrageous employee conduct.  If one of Mr. Warren's employees intentionally disrupted a gas pipeline as a form of environmental protest, resulting in economic and personal injuries, would he agree that

the employee acted within the scope of employment simply by virtue of having been authorized to operate the pipeline?  Presumably no.  Nor should he—such a rule would be absurd, massively expanding employer liability and rendering the scope-of-employment test a virtual nullity.

Mr. Warren also argues that Booz Allen's motion implicates factual issues precluding dismissal at this stage.  Opp'n at 18–19.  But the alleged fact issues Mr. Warren highlights are nothing more than red herrings.  The First Amended Complaint itself establishes that the disclosure of Mr. Warren's tax information resulted from Littlejohn's criminal conduct.  *See, e.g.*, Mot. at 17–18.  That alone precludes vicarious liability, and none of the additional information presented in Booz Allen's motion is necessary to reach that inescapable conclusion.  The fact that Littlejohn's misconduct violated Booz Allen and IRS policies only reinforces Booz Allen's argument that it cannot be held liable for Littlejohn's rogue actions, which were not intended to (and certainly did not) benefit Booz Allen.  The same is true with respect to Booz Allen's condemnation of Littlejohn's conduct and its full cooperation with the government—such facts merely provide additional context for why the Court should refuse to credit the spurious allegation that Booz Allen knew or approved of Littlejohn's criminal activities.

Mr. Warren's reference to *Loveless v. Estevez*, No. 01985, 2019 WL 4187465 (Md. Ct. Spec. App. Sept. 3, 2019), actually supports Booz Allen's position.  There, Loveless brought a claim against the Harford County Board of Education and her former biology teacher, Estevez, alleging causes of action arising out of sexual abuse by Estevez that took place in 2013 and 2014 when Loveless was a student.  *Id.* at *1.  In the complaint, Loveless alleged that the Board was vicariously liable for Estevez's battery and intentional infliction of emotional distress.  *Id.* at *2.  The trial court, however, granted the Board's motion to dismiss on the ground that Estevez's criminal actions were outside the scope of his employment.  *Id.* at *4.  Loveless challenged that

conclusion on appeal.  In affirming, the Court of Special Appeals explained that, although "an act may be within the scope of employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious," "a *personal* forbidden act is not."  *Id.* at *14.  "Conduct that is unprovoked, highly unusual, and quite outrageous," the court continued, is "sufficient to indicate that the motive was a purely personal one."  *Id.* (quotation marks omitted).  "Returning to the case before [it]," the court ultimately concluded that Estevez's sexual abuse was outside the scope of his employment.  *Id.* at *15.  In so doing, it noted that "Estevez's criminal conviction for [his] conduct also lends further support to the Board's claim that his action was outside the scope of his employment."  *Id.* (quotation marks omitted).

*Loveless* counsels strongly in favor of dismissal.  Like the defendant in *Loveless*, Littlejohn engaged in conduct that was "unprovoked, highly unusual, and quite outrageous."  For example, the First Amended Complaint concedes that Littlejohn's conduct was "unprecedented" and "unparalleled," FAC ¶¶ 39, 58, and that, among other things, Littlejohn "exploited a loophole in IRS controls, FAC ¶ 47, "uploaded . . . stolen tax information to a private website," FAC ¶ 5, and "stored" that information "on personal data storage devices such as his Apple iPod," FAC ¶ 47.  In addition, Littlejohn, like the defendant in *Loveless*, was criminally charged and convicted for his conduct.  Thus, like the court in *Loveless*, this Court should hold that Littlejohn's actions were outside the scope of his employment and dismiss his Section 7431 claim.

## II.    Mr. Warren Does Not and Cannot State a Claim for Negligent Supervision.

### A.    Littlejohn's Political Views are Not a Legally Cognizable Incompetency.

In his opposition, Mr. Warren doubles down on his argument that a person can be considered unfit for employment based on his political views.  Opp'n at 20–21.  But this focus is fatal to the First Amended Complaint because as a matter of law Littlejohn's politics did not render him incompetent.  Certainly, Americans with strong views about the president or tax policy are

able to walk into their places of business each morning and perform the tasks required of them effectively—without committing crimes.  This is true even for employees entrusted with sensitive information, or even tax data specifically—a point Mr. Warren emphasizes in his opposition.  Putting aside that this category is far from "narrow," as Mr. Warren suggests, Opp'n at 21, undoubtedly there are accountants, government employees, and even lawyers—conservative and liberal, Trump supporters and critics—who do not disclose the "unmasked taxpayer data" to which they have "unrestricted and unmonitored access."  *Id.*  Incompetence is not cabined to instances of physical danger to others, *contra id.*, but it also is not so unbridled to sweep in the myriad employees with strong political views and access to confidential information.

### B.   The First Amended Complaint Does Not Adequately Allege That Booz Allen Knew About Littlejohn's Political Views or Desire to Disclose Tax Data.

To succeed on his negligent supervision claim, Mr. Warren must show that Booz Allen knew about Littlejohn's political views and his supposed desire to steal and disclose confidential information—the only purported incompetence the opposition relies upon.  The First Amended Complaint baselessly alleges that Booz Allen knew of Littlejohn's views and desires because "Littlejohn made [them] known to Booz Allen supervisors and coworkers."  FAC ¶ 93.  That's it.  There is no explanation as to how Littlejohn publicized these views.  No allegations as to when or where these views were aired, or even what the aired views were.  Nothing more specific than the generic "supervisors and coworkers" indicating to whom Littlejohn supposedly spoke.  Mr. Warren appears to have recognized that the First Amended Complaint needed to allege that Littlejohn's views were known, and so he baldly asserted that Littlejohn's views were known.  *See also* FAC  ¶ 44.  This is plainly the type of "formulaic recitation of the elements of the cause of action" that fails to meet the pleading standard of *Twombly* and *Iqbal*.  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The fact that the First Amended Complaint made this single allegation on "information and belief" is only further evidence that there is no support for this element.  There is no prohibition on pleading on "information and belief," but even the cases cited by Mr. Warren's opposition explain that a plaintiff must have "sufficient data to justify interposing an allegation on the subject" before doing so.  Opp'n at 22 (quoting *Vaughn v. Perea*, No. 20-7532, 2021 WL 5879176, at *2 (4th Cir. Dec. 13, 2021)); *accord* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (3d ed. 2004); *see also Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 37 (D. Md. 2020) (requiring that plaintiff offer "sufficient data to justify his allegation" to plead on information and belief).  Moreover, the *Vaughn* court noted the "adequate data" the plaintiff *did* have was "based on his first-hand experience": the plaintiff himself was assaulted, though he was not sure which of two police officers attacked him first and how.  *Vaughn*, 2021 WL 5879176, at *2.  But the First Amended Complaint offers no facts, from first-hand or even second-hand knowledge, to support this inference or "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  It does not even offer circumstantial evidence from publicly available sources—a Facebook page, a tweet, a news story—that might suggest Littlejohn was open about his views generally, from which one may infer he was similarly loquacious with his colleagues.

In fact, the other allegations in the First Amended Complaint—and common sense— support the opposite conclusion.  Littlejohn's careful and concerted efforts to mask his activities and avoid detection make it implausible that he would make known to Booz Allen his supposed desire to steal and disclose confidential tax data.  *See* Mot. at 22.  Without any facts, direct or

circumstantial, to support this implausible—and barely even conceivable—allegation made on "information and belief," this element, and the entire claim, necessarily fail.

### C.   Littlejohn's Independent Criminal Acts Were Not Foreseeable.

First, for reasons explained above, Mr. Warren's allegations that Booz Allen had any actual knowledge of Littlejohn's intent to disclose tax data are unsupported and implausible, and cannot be used to advance his foreseeability argument.  And second, the suggestion that Booz Allen reasonably could have detected Littlejohn's criminal activities is undermined by the First Amended Complaint's *own* description of the steps Littlejohn had to take to conceal his actions from Booz Allen: Littlejohn had to "exploit[] a loophole in [*IRS*] controls" and use his "specialized technical skills" to avoid detection, showing the extent of the controls the IRS and Booz Allen *did* have in place that Littlejohn had to circumvent.  FAC ¶ 47 (emphasis added); *see also* Mot. at 26–27.  Mr. Warren's attempt to manufacture a factual issue by pleading inconsistent and implausible allegations that Booz Allen did or could foresee Littlejohn's criminal activity is insufficient to defeat a motion to dismiss.

Nor were Littlejohn's criminal actions foreseeable based upon his political views, even if Booz Allen was aware of those (which it was not).  The First Amended Complaint itself emphasizes how anomalous this leak was, calling it "unprecedented," FAC ¶ 39, and "unparalleled in the IRS's history," FAC ¶ 58—completely undermining the opposition's rather baffling contention that the disclosure was "highly predictable."  Mr. Warren's argument is the product of hindsight bias.  From an *ex ante* perspective, an employee's political views are not obviously correlated with a likelihood of criminal activity.  As discussed above, *supra* Section II.A, numerous individuals have both access to sensitive information and strong political views, but *never* commit crimes or break their ethical obligations to keep such information confidential. Certainly, this is not because every accounting firm has its liberal auditors on special watch lists,

or because conservative tax lawyers are barred from working for any Democratic clients. Indeed, it would be patently *unreasonable* for an employer to create special controls for every one of its employees who express political opinions, even strident views, on the sliver of a chance that one of them will steal information *because* of his or her politics. Without it being remotely foreseeable that any of numerous employees with strong political views would go on to disclose sensitive information and break the law, Booz Allen's supposed failure to specially monitor Littlejohn because of his views is not a "legally cognizable cause" of Mr. Warren's injuries. *See Young v. Hous. Auth. of Balt. City*, No. 17-cv-713, 2017 WL 5257127, at *11 (D. Md. Nov. 13, 2017).

This is true as a matter of law. The upshot of the opposition's argument is that employees with certain strongly held political views are not to be trusted, and must be monitored to ensure they do not break the law. Not only is that argument, as applied here, riddled with pleading deficiencies, it is not what Maryland tort law—or common sense—dictates. Count II should be dismissed with prejudice.

## III.    Count III Should Be Dismissed Because Booz Allen Did Not Invade Mr. Warren's Privacy, Littlejohn Did.

Mr. Warren does not contend that Booz Allen can be directly liable for invading his privacy. Nor could he. As Booz Allen's renewed Motion to Dismiss explained, the First Amended Complaint is bereft of any plausible allegation that Booz Allen itself unlawfully publicized Mr. Warren's tax information. *See* Mot. at 27. Instead, Mr. Warren doubles down on his vicarious liability theory, which hinges on the allegation that Booz Allen, "acting through Mr. Littlejohn," publicized his tax information to ProPublica. *See* Opp'n at 26; FAC ¶ 110. But as explained above, that theory cannot withstand scrutiny, and Booz Allen cannot be vicariously liable for Littlejohn's conduct outside the scope of employment. *See supra* Section I.C.

Mr. Warren again attempts to manufacture fact issues, reciting ten factors courts may consider in assessing whether an employee acted within the scope of employment.  *See* Opp'n at 27.  The mere existence of these factors, however, does not render the scope of employment a fact issue.  Maryland law is clear that where, as here, an employee's conduct is "highly unusual" and "outrageous," that "*in itself* is sufficient to indicate that the motive was a purely personal one and the conduct outside the scope of employment."  *Sawyer v. Humphries*, 587 A.2d 467, 471 (Md. 1991) (quotation marks omitted) (emphasis added); *see Loveless*, 2019 WL 4187465, at *14–15; *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 655 A.2d 1, 25 (Md. Ct. Spec. App. 1995).

Try as he might, Mr. Warren cannot escape the conclusion that his amended pleading does not, and cannot, allege that Littlejohn's unlawful disclosure somehow benefitted or was authorized by Booz Allen.

## Conclusion

For the foregoing reasons, Booz Allen respectfully requests that the First Amended Complaint be dismissed in its entirety with prejudice.

Dated: July 26, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ Robert A. Van Kirk_
Robert A. Van Kirk (*pro hac vice*)
Steven M. Cady*
Andrew L. Hoffman*
Ilana Frier (Bar No. 30515)
Natalie R. Schmidt*
Matthew Cunningham*
680 Maine Avenue SW
Washington, DC  20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
rvankirk@wc.com
scady@wc.com

* *Pro hac* application forthcoming

*Counsel to Booz Allen Hamilton Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically on July 26, 2024, and will therefore be served electronically upon counsel of record.

/s/ Robert A. Van Kirk
Robert A. Van Kirk