**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| KELCY L. WARREN<br><br>*Plaintiff,*<br><br>v.<br><br>BOOZ ALLEN HAMILTON INC.<br><br>*Defendant.* | Civil Action No. 8:24-cv-01252-LKG<br><br>**Jury Trial Demanded** |

**JOINT STATUS REPORT IN RESPONSE TO**
**AUGUST 27, 2026, ORDER RELATED TO DISCOVERY DISPUTES**

Pursuant to this Court's August 27, 2026 Order (ECF No. 107), Plaintiff Kelcy Warren ("Mr. Warren" or "Plaintiff") and Defendant Booz Allen Hamilton, Inc. ("Booz Allen" or "Defendant") respectfully submit this Joint Status Report regarding the Parties' efforts to resolve the pending discovery disputes identified by the Court (Category II through VII; The Investigative File; and Issue # 2). The Parties engaged in several meet-and-confers and exchanged correspondences for four weeks to come to agreeable resolutions, with one point of disagreement remaining as set forth below.

## I. The Investigative File

**Plaintiff's Position:** Pursuant to the Court's order at ECF No. 100, the parties met and conferred to discuss any waivers of privilege. For the reasons set forth below, Mr. Warren contends that the purported privilege Booz Allen asserts over documents in its privilege log either does not exist or is waived because these are factual, non-privileged documents.

Booz Allen is improperly withholding as privileged documents within its "Investigative File" that by its own admissions "reflect facts rather than privileged communications." *See* ECF

93 Ex. F, 2026.02.11 Email from S. Cady. Under *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458 (D. Md. 1998), a case this Court recognizes "controls," counsel's subsequent collection of otherwise discoverable documents does not shield such documents from discovery. July 29, 2026 Tr. at 126:18. The *Nutramax* court expressly held that "[i]f otherwise discoverable documents, which do not contain pure expressions of legal theories, mental impressions, conclusions or opinions of counsel, are assembled by counsel, and are put to a testimonial use in the litigation, then an implied limited waiver of the work product doctrine takes place, and the documents themselves, not their broad subject matter, are discoverable." *Nutramax Labs., Inc.*, 183 F.R.D. at 467. The Supreme Court has opined that "at a minimum" testimonial use includes "testimony at a preliminary hearing, ***before a grand jury***, or at a formal trial; and to police interrogations" given that these are "modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (emphasis added). Booz Allen has plainly admitted to this Court that the documents it claims are privileged contain "certain factual material" and were documents "*prepared in cooperation with the* ***DOJ's grand jury investigation*** *into Littlejohn's crime*." ECF 76 at 4. Booz Allen has further touted to the public that the "DOJ expressed its gratitude for the company's support of the criminal investigation and assistance in Littlejohn's prosecution, which led to his incarceration."[1] Accordingly, these documents fall within the waiver outlined under *Nutramax*.

Though Booz Allen seeks to now amend its previous representations to the Court by claiming that the gathering of these documents was "purely a legal investigation at the direction conducted by in-house counsel" and "[t]here was never any testimonial use of the investigative

---

[1] BOOZ ALLEN, https://www.boozallen.com/about/company-statement/statement-on-unauthorized-disclosure-of-tax-returns.html (last visited September 2, 2026).

file. That was never provided to the Department of Justice," its arguments fare no better. August 21, 2026 Meet-and-Confer Tr. 46:12–17.[2] Even if it is true that the documents were not put to testimonial use during the grand jury proceeding—despite Booz Allen's admission these documents were collected for the grand jury investigation—Booz Allen's position would yield absurd results. By Booz Allen's logic, every time a company is faced with a lawsuit, its in-house counsel could simply collect all relevant, non-privileged, factual documents and correspondences for purposes of an internal investigation and then refuse to produce them through the normal course of discovery under a shield of privilege.

Booz Allen's reliance on *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) is inapposite. In fact, the *Nutramax* court expressly distinguished the Fourth Circuit's holding in *In re Allen*, recognizing that while counsel's "selection and compilation" of documents could be construed as opinion work product, and thus are protected from disclosure even if put to a testimonial use, that conclusion would improperly "exalt form over substance" where the documents at issue are themselves discoverable and "***do not contain pure expressions of counsel's mental impressions or theories.***" *Nutramax*, 183 F.R.D. at 466 (emphasis added). Indeed, the *Nutramax* court identified several important reasons why *Allen's* holding should not be stretched as Booz Allen suggests, including that "the mere selection of otherwise discoverable documents by counsel falls closer to fact work product on the continuum than it does to core opinion work product," and because such disclosures do "not do violence to the policy underlying the work product doctrine, particularly if those documents have already been put to a testimonial use by the party whose

---

[2] The parties have provided the Court with a copy of its August 21, 2026 meet-and-confer transcript via email.

attorney selected and compiled them." *Id. Nutramax* underscores the absurdity of allowing a blanket privilege claim to be asserted over otherwise non-privileged, factual documents.

Despite the undeniable factual nature of the documents it withholds, Booz Allen refuses to produce such documents in the absence of a global waiver agreement. *See* ECF 93 Ex. F, 2026.02.11 Email from S. Cady. ("The documents we tentatively plan to produce are labeled 'privileged and confidential,' but we believe they reflect facts rather than privileged communications, so we are inclined to produce them—so long as our production is not used as an argument that we have waived."). But such a requirement is untenable under binding caselaw requiring discovery of the documents. And as discussed by the Court at the July 29, 2026 discovery conference, the rules do not support such an arrangement. July 29, 2026 Tr. at 25:2–9 (rejecting the "conditioning of, I will only do something even though the material thought is relevant . . . if you agree to some compromise").

At bottom, Booz Allen does not claim that any of the underlying documents logged on the privilege log are attorney work product or privileged. In fact, it has admitted the opposite. At the same time, Booz Allen refuses to search the custodial files of several individuals identified on its privilege log to allow Plaintiff to seek these documents through ESI discovery. For example, Mr. Warren requested that Booz Allen search the files of John Ellison, a Contracts Manager at Booz Allen; Stacy Selenfriend, who previously worked as Principal/Managing Director at Booz Allen from 2016-2020; Sheetal Maithel, a former Lead Associate from 2019-2019; and Tsuen Haynes Ko, who Booz Allen admitted had purported ties to Charles Littlejohn. ECF 93-1 at 70. Yet Booz Allen stated it could not "locate mailbox data" for these individuals. *Id*. These four individuals are but a few examples of non-legal Booz Allen employees that Mr. Warren identified through his own diligence. Mr. Warren does not know if there are more because Booz Allen has not identified

who else of the 66 individuals appearing on Booz Allen's privilege log were non-legal employees. Booz Allen asserts that it has identified all relevant individuals with knowledge of the facts, claims, or defenses of this case. But the privilege log plainly shows that least four additional non-legal individuals—whose documents were relevant to the unauthorized disclosures by Littlejohn—exist.

Booz Allen cannot have it both ways: it cannot, on the one hand, log relevant, factual non-privileged documents on a privilege log and then refuse to produce the underlying documents under a shield of privilege, while on the other hand, refuse to search the custodial files of these non-legal individuals through whom Plaintiff could independently obtain these documents via ESI discovery. Nor is Booz Allen discharged of its duty to produce all discoverable information because the mailbox data for certain individuals no longer exists—especially when those relevant, factual, non-privileged documents are plainly in Booz Allen's possession in a location other than custodial files as evidenced by the privilege log itself.

Accordingly, Mr. Warren requests that the Court overrule Booz Allen's objections and compel Booz Allen to produce any and all documents appearing on the privilege log at ECF 93-1, Exhibit G, which are otherwise not privileged or protected by work product but for Booz Allen's "legal investigation" privilege claim.

**Defendant's Position:** Plaintiff's claims regarding the documents gathered and selected by Booz Allen's counsel as part of its investigation of the disclosures by Charles Littlejohn ("the legal investigative file") are meritless and should be rejected. As a threshold matter, this issue is not properly before the Court—it was not raised in Plaintiff's Notice of Intent to File a Motion, ECF No. 59, or the Court's referral of the same, ECF No. 68. Plaintiff also raises this issue *before* complying with Local Rule 104.8 and Judge Griggsby's Case Management Order at Part II.A. ECF No. 17. These facts alone should be dispositive. On the merits, the law is clear and one-

sided: (1) documents collected by or at the request of in-house counsel as part of Booz Allen's internal legal investigation into Littlejohn's leak are protected by the attorney-client privilege and work product doctrine, and (2) Plaintiff has failed to establish any waiver—implied, express, or otherwise. The law is equally clear that, to the extent documents from the legal investigative file are produced as part of Booz Allen's agreed-upon custodial searches, such productions do not trigger a subject matter waiver. Plaintiff does not argue otherwise. Indeed, he does not request every document on Booz Allen's privilege log or every document making up the legal investigative file—only those "which are otherwise not privileged or protected by work product but for Booz Allen's 'legal investigation' privilege claim." That request, however, lacks specificity, invites confusion, and should be rejected for the reasons discussed above and herein.

## I. This Court Lacks Jurisdiction to Resolve This Issue.

Plaintiff's claims fail at step zero. A magistrate judge's authority is derived entirely from, and limited to, the matters designated by the district court through a referral order. Plaintiff did not raise his claims regarding the legal investigative file in the sole filing referred to this Court for resolution. That omission is fatal.

Plaintiff failed to comply with Local Rule 104.8, which requires a moving party to serve a motion and a memorandum in support of the motion setting forth "the asserted basis for the insufficiency of the response." Local Rule 104.8 also requires a briefing schedule that affords the non-moving party an opportunity to respond after receiving a copy of the motion and then requires the parties to "hold the conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel." Plaintiff's attempt to raise this issue through the back door thus cuts short his obligation to meaningfully meet and confer on a sensitive privilege issue and purports to deny Booz Allen the opportunity to meaningfully respond after seeing the

briefed argument and conferring on the same. In addition, Judge Griggsby's Case Management Order unambiguously states that no motion may be filed in this action before (1) the party seeks a Pre-Motion Conference with the Court and (2) the party files a Notice of Intent to File a Motion. ECF No. 17 at 2. Plaintiff concedes that he failed to do either with respect to any discovery dispute regarding Booz Allen's internal legal investigation file. ECF No. 71 at 2 n.1. Any dispute regarding a sensitive privilege issue should be resolved consistent with the Local Rules and the Case Management Order.

The vagueness of Plaintiff's requested relief—an order compelling production of "any and all documents appearing on the privilege log at ECF 93-1, Exhibit G, which are otherwise not privileged or protected by work product but for Booz Allen's 'legal investigation' privilege claim," *supra* at 5—further demonstrates why Plaintiff should comply with Local Rules and the Case Management Order. At no point has Plaintiff identified with any degree of specificity the documents that he contends must be produced, impeding Booz Allen's (and the Court's) assessment of his claims. *Cf. Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,* 1998 WL 1742589, at *4 (E.D.N.C. Sept. 28, 1998) (denying motion to compel because "Plaintiff largely fail[ed] to identify specific documents and isolate their possible relevance to the merits of its case" or "advance[] specific challenges to Defendants' claims of attorney-client and/or work product privilege"). The Local Rules and Case Management Order are intended to prevent this very thing, and Plaintiff should not be permitted to skirt them.

What is more, 28 U.S.C. § 636 is the exclusive source of a magistrate judge's jurisdiction in civil proceedings. It "delineates and circumscribes the scope of magistrate judges' authority," *United States v. Benton*, 523 F.3d 424, 429 (4th Cir. 2008), and limits jurisdiction of "any pretrial matter pending before the court" to those "designate[d] [to] a magistrate judge to hear and

determine," 28 U.S.C. § 636(b)(1)(A); *see* D. Md. Local Rule 301(5). "If the matters are not properly referred, then the magistrate judge lacks the authority to enter orders in the matter." *In re Oral Testimony of a Witness Subpoenaed Pursuant to Civ. Investigative Demand No. 98-19*, 182 F.R.D. 196, 200 (E.D. Va. 1998). Judge Griggsby's referral to this Court is narrow and unambiguous: resolution of ECF 59—nothing more. *See* ECF No. 68 (listing as the sole referral "[r]esolution of ECF 59"). Nowhere in ECF No. 59 did Plaintiff raise any issue related to the internal legal investigative file—not the scope of any privilege, work product protection, or waiver. Indeed, as this Court recognized during the April 29, 2026 hearing, and as Plaintiff conceded in a footnote to his March 30 letter, these issues "have arisen during the course of the parties' discussions" *after* the referral. ECF 71 at 2 n.1. This Court is therefore without jurisdiction to resolve this issue, and Plaintiff's attempt to shoehorn it into this proceeding should be rejected.

## II. The Legal Investigative File Is Protected by the Attorney-Client Privilege and Work Product Doctrine.

Even if the Court did have jurisdiction, Plaintiff's claims also fail on the merits. It is black-letter law—established by the Supreme Court, buttressed by the Fourth Circuit, and confirmed by other courts—that legal investigative files compiled by or at the direction of counsel are protected by both the attorney-client privilege and the work product doctrine. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 396 (1981); *In re Allen*, 106 F.3d 582, 600-08 (4th Cir. 1997).

The Supreme Court established the foundational principle in *Upjohn*: the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." 449 U.S. at 390. In *Upjohn*, as here, in-house counsel conducted an internal factual investigation—interviewing employees and collecting documents—and the Court held that the privilege protected both the attorney's interview notes and the underlying communications because "the first step in

the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91.

The Fourth Circuit reinforced these principles in *In re Allen*, holding that investigation files prepared by counsel are protected and that an attorney's "selection and compilation" of factual documents constitute opinion work product—the highest tier of protection. 106 F.3d at 608. Specifically, the court explained that counsel's "choice and arrangement" of selected "employment records" (*i.e.*, factual documents) "reveals her thought processes and theories regarding . . . litigation," warranting the "nearly absolute immunity" provided to opinion work product. *Id.* at 607-08 (quotation omitted). Courts around the country concur. *See, e.g.*, *In re FirstEnergy Corp.*, 154 F.4th 431, 436-38 (6th Cir. 2025) (documents created as part of internal legal investigations are "clearly covered" by "the attorney-client and work-product doctrines"); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("[T]he selection and compilation of documents by counsel . . . falls within the highly-protected category of opinion work product."); *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) ("[D]ocuments, including business records, that were specifically selected and compiled by a party or its representative in preparation for litigation are opinion work product because the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation."); *see also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research. We believe [in-house counsel's] selective review of AMC's numerous documents was based upon her professional judgment of the issues and defenses involved in this case. This mental selective process reflects [her] legal theories and thought processes, which are protected as work product.").

Booz Allen's internal legal investigative file falls squarely within this framework. It was compiled by and at the direction of in-house counsel in anticipation of future litigation and in connection with the DOJ's grand jury investigation into Littlejohn's crime.[3] Communications housed in the investigative file with in-house counsel are indisputably privileged. And counsel's selection and organization of materials—including factual documents provided at counsel's request—reflect protected mental impressions and legal theories. Even if these documents were construed as factual work product, contrary to the Fourth Circuit's opinion in *In re Allen*, they separately are protected by the attorney-client privilege. *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 34 (D.D.C. 2016), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018) (finding that PowerPoints and spreadsheets provided to in-house counsel were shielded from discovery because "the attorney-client privilege protects even purely factual communications between attorney and client when those facts are gathered at the request of in-house counsel for the purpose—or at least with a significant purpose—of providing legal advice to the corporation."); *see Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 4876 (D. Md. 2014), *aff'd*, 885 F.3d 271 (4th Cir. 2018) (affirming that "intracorporate communications concerning information requested by a lawyer for the purposes of rendering legal advice" were "protected by the attorney-client privilege").

Plaintiff brazenly asserts that "Booz Allen does not claim that any of the underlying documents logged on the privilege log are attorney work product or privileged." *Supra* at 4. That

---

[3] That the documents were "prepared in cooperation with the DOJ's grand jury investigation into Littlejohn's crime," ECF 76 at 4, or that Booz Allen assisted DOJ in its investigation of Littlejohn says nothing about whether *the internal legal investigative file* was provided to the DOJ or subsequently used in a grand jury proceeding. *Contra supra* at 2. It was not. *Infra* at 11.

is demonstrably false. Booz Allen consistently has claimed the documents in question are protected by the attorney work product and attorney-client privilege, ECF 76 at 4-5 ("It is black-letter law that legal investigation files are protected by the attorney-client privilege and the work product doctrine."); ECF 93 at 14 (same); August 21, 2026 Transcript at 40:24-41:24 (Plaintiff's counsel: "[A]re you guys asserting any opinion work product or privilege or fact work product, I guess, with respect to the actual documents? . . . Booz Allen's counsel: [I]n short, yes, we are asserting opinion work product over the documents themselves."), and never made representations to the contrary. Counsel's reference to certain documents "reflect[ing] facts" requested by in-house counsel does not detract from the protections these documents are entitled under controlling law.

## III. Plaintiff Has Not Established Any Waiver.

Plaintiff contends, without a shred of evidence, that the investigative file was "put to testimonial use" in connection with the DOJ's investigation and that production is therefore required under *Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*, 183 F.R.D. 458 (D. Md. 1998). This argument fails on the facts and the law.

**First, Plaintiff's factual premise is simply wrong.** The legal investigative file was never provided to the DOJ. Booz Allen made a *separate* document production in response to the grand jury subpoena. That document production did not contain Booz Allen's internal legal investigative file. Even if the legal investigative file had been produced (and it was not), there is no evidence—because none exists—that it was ever put to any testimonial use. It never was.

**Second, Plaintiff's reliance on *Nutramax* is misplaced and, if anything, supports Booz Allen's position.** The *Nutramax* court's holding was expressly limited to a narrow set of circumstances not present here. The court held: "If otherwise discoverable documents, which do

not contain pure expressions of legal theories, mental impressions, conclusions or opinions of counsel, are assembled by counsel, ***and are put to a testimonial use in the litigation***, then an implied ***limited waiver*** of the work product doctrine takes place, and the documents themselves, not their broad subject matter, are discoverable." 183 F.R.D. at 467 (emphases added). Critically, *Nutramax* involved counsel selecting and compiling documents to prepare the party's own witnesses for depositions in the same litigation—a testimonial use that the court found warranted limited disclosure to enable effective cross-examination. *Id.* at 471-72. That is not remotely this case. Booz Allen never provided its internal legal investigation file to the DOJ or put it to testimonial use. The preparation of an internal legal investigation file alone does not trigger any waiver under *Nutramax* or any other authority.

Plaintiff's parade of horribles, *supra* at 3, does not compel a different rule for a simple reason: while in-house counsel's collection of documents deemed relevant to future litigation is privileged and work product, the same documents separately housed in custodial files may not be. And, as explained below, Booz Allen repeatedly has agreed to produce all non-privileged and responsive documents from its review of custodial files. Thus, it is simply not the case that Booz Allen is refusing to produce "factual documents and correspondences" found "through the normal course of discovery under a shield of privilege." *Contra supra* at 3.

**Third, *Nutramax* recognized the critical distinction between fact and opinion work product.** Drawing on the Fourth Circuit's analysis in *In re Allen* and *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988), the *Nutramax* court emphasized that even the limited implied waiver recognized in that case did not extend to opinion work product. 183 F.R.D. at 465-66. Here, counsel's selection and compilation of documents for the investigative file constitutes

opinion work product under *Allen*, 106 F.3d at 608, and thus is entitled to near-absolute protection regardless of Plaintiff's waiver theory.

In short, Plaintiff cannot meet a single prerequisite of his own cited authority. Thus, *Nutramax*'s narrow and limited waiver is not triggered on these facts.

## IV. There Is No Subject Matter Waiver.

Booz Allen has agreed to produce all non-privileged and responsive documents based on its review of custodial files.[4] Booz Allen also has confirmed that it will produce those documents even if counsel separately selected some of the same documents for its internal legal investigation file. The reason for this is simple and consistent with the governing case law. On the one hand, if the documents are identified in custodial files, their collection does not reflect the "selection and compilation" of counsel; but on the other hand, if the documents are pulled from the internal legal investigation file, their collection would reveal counsel's "choice and arrangement" of materials, *i.e.*, opinion work product. *In re Allen*, 106 F.3d at 607-08. Any production from the custodial files thus would not result in any subject matter waiver over the internal legal investigation file. Indeed, even if a production from custodial files were construed as disclosure of non-opinion work

---

[4] Plaintiff's attempt to reopen a resolved dispute about additional custodians is a red herring and reaffirms why Plaintiff should be ordered to comply with Local Rules and the Case Management Order and identify with specificity the documents he believes he is entitled to and has not received. Plaintiff identifies four individuals by name, yet only two (John Ellison and Stacey Selenfriend) appear on the privilege log. ECF 93, Ex. G. And each time their names appear, it is always alongside custodians Booz Allen has identified and agreed to search. As Booz Allen has previously explained, and this Court acknowledged, "just because someone received an email certainly does not mean that person was involved in a meaningful way with the project, or would have non-duplicative materials." *U.S. Home Corp. v. Settlers Crossing, L.L.C.*, 2012 WL 13014153, at *4 (D. Md. Oct. 24, 2012); July 29, 2026 Tr. at 39:21-40:1 ("[Y]ou can't just say, gee, because someone's on a privilege log they must have relevant information; or, gee, because they popped up on an email, they must have relevant information."). Plaintiff has failed to demonstrate why a review of agreed-upon custodial files is insufficient.

product—and it is no such disclosure—both the Fourth Circuit and the *Nutramax* court have made clear that any waiver triggered by disclosure of non-opinion work product is limited to "the documents themselves, not their broad subject matter." *Nutramax*, 183 F.R.D. at 467; *see also Martin Marietta*, 856 F.2d at 625-26 (distinguishing between limited waiver and broad subject matter waiver in the work product context).

The Federal Rules similarly contemplate non-waiver productions based on an agreement between the parties. Fed. R. Evid. 502(e) (authorizing agreements regarding the effect of disclosure in federal proceedings). Such arrangements allow access to factual material while foreclosing any argument of subject-matter waiver, and are routine in complex litigation. Consistent with this framework, Booz Allen repeatedly has offered (and remains willing) to produce certain documents from the internal legal investigative file—subject to an agreement from Plaintiff that such production would not constitute a waiver. *E.g.*, ECF No. 76 at 5, Ex. 6; ECF No. 93 at 14. This arrangement would provide Plaintiff the maximum amount of non-privileged discovery while preserving the protections to which Booz Allen is entitled under well-established case law. Plaintiff has refused to agree to this reasonable, standard, and legally supported framework.

Dated: September 2, 2026

By: */s/ Sarah E. McVay*

**KIRKLAND & ELLIS LLP**

Sarah E. McVay
Maryland Bar No. 30256
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 389-5271
Fax: (202) 389-5200
Email: sarah.mcvay@kirkland.com
Jeremy A. Fielding *(pro hac vice)*
Barira Munshi *(pro hac vice)*
Sydney Corry *(pro hac vice)*
McKenzie Aston *(pro hac vice)*
4550 Travis Street
Dallas, Texas 75205
Tel: (214) 972-1770
Fax: (214) 972-1771
Email: jeremy.fielding@kirkland.com
barira.munshi@kirkand.com
sydney.corry@kirkland.com
mckenzie.aston@kirkland.com

**ATTORNEYS FOR PLAINTIFF KELCY L. WARREN**

By: */s/ Andrew L. Hoffman*

**WILLIAMS & CONNOLLY LLP**

Robert A. Van Kirk (*pro hac vice*)
Steven M. Cady (*pro hac vice*)
Joseph Q. Wood *(pro hac vice)*
Andrew L. Hoffman *(pro hac vice)*
Ilana Frier (Bar No. 30515)
James N. Sasso *(pro hac vice)*
Sararose Gaines (Bar No. 30832)
680 Main Avenue SW
Washington, D.C. 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
Email: rvankirk@wc.com
scady@wc.com
jwood@wc.com
ahoffman@wc.com
ifrier@wc.com
jsasso@wc.com
sgaines@wc.com

**ATTORNEYS FOR DEFENDANT BOOZ ALLEN HAMILTON INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically on this 2nd day of September, 2026, and will, therefore, be served electronically upon the following counsel of record:

Robert A. Van Kirk
Steven M. Cady
Joseph Q. Wood
Andrew L. Hoffman
Ilana Frier
James N. Sasso
Sararose Gaines
WILLIAMS & CONNOLLY LLP
680 Main Avenue SW
Washington, D.C. 20024

*/s/ Sarah E. McVay*
Sarah E. McVay